Chief Judge Desmond.
The Appellate Division as its reasons for reversal first stated that the proposed Y. W. C. A. building would not be a nonprofit 1 ‘ membership club ’ ’ use within the meaning of the Write Plains Zoning Ordinance, then said without specification that ‘ ‘ there is no support in the record for a number of findings made, and required to be made, by the board ”. We think that neither of those positions was well taken and that the board’s action was valid.
As to the Appellate Division’s first ground, the zoning law says that the board may as special uses in BO districts permit “ Golf clubs, country clubs and other membership clubs not operated for profit ”, surely a broad inclusive category. The permit as granted authorized the construction by the local Y. W. C. A. of an “ activities building, including residence dormitory facilities ’ ’ for 60 persons ‘1 to be used by club members only, together with indoor and outdoor recreational facilities ”, the dormitory facilities to be “ restricted for use only by members and employees of the applicant”. On this record it was not permissible for the Appellate Division to hold as matter of law that the permit was not for such a ‘' membership club ’ ’ use as is allowed by the ordinance. The building was to be of the conventional, well-known Y. W. C. A. type with sleeping rooms like other kinds of clubs. The objectants, as was their right, expressed their opposition to such a use in their neighborhood *32 but they did not really claim that it would not be a clubhouse or that the Y. W. 0. A. is not a nonprofit membership corporation. Some of the statements at the hearing show a mistaken belief that the board could and should order that the Y. W. 0. A. build in some other neighborhood. Some objectors thought it was to be a sort of hotel. The board heard the objections, checked out the true facts and exercised its statutory discretion in granting the permit, after imposing carefully drawn restrictions.
Now, let us consider the evidence produced before the board. Recognizing settled practice and the practicalities, we have said that zoning hearings may be quite informal and that the positions of the contending' parties need not be put into the form of sworn testimony (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 285, 287). At this hearing there were lawyers representing each side but no one offered formal testimony or objected to the unsworn statements put in by all parties alike. As to the sufficiency of the proof (as distinguished from its form), we will assume that under the ordinance there had to be a showing: first, of appropriate location as to transportation, water, sewerage, fire and police; second, of reasonable safeguards of neighborhood character and property values; and, third, of absence of undue traffic congestion or traffic hazard. On this record these were all questions of fact for the board to decide.
As to alleged destruction of neighborhood character and property values, we first take a general look at the locality. The proposed site is not on a quiet country lane or in a secluded urban residential area. The premises are on North Street in White Plains, near Bryant Avenue. Directly across North Street on a 70-acre site, the city is putting up a group of high school buildings complete with athletic fields, etc. At the nearby corner of North Street and Bryant Avenue a church is under construction and two other new churches are being, or about to be, built. Directly adjoining this Y. W. C. A. site is a large country club. The nearest street intersection is at Bryant Avenue, a four-lane highway. Farther north on North Street there is a sizable office building and two hospitals. This is a changing neighborhood, its pristine seclusion already ended by churches, a very large school, a country club, business offices and hospitals and a nearby intersecting main highway. The board went to *33 great length to protect what qniet there remained by sharply reducing the number of sleeping rooms in the proposed building, by relocating those rooms and by changing the location of the auditorium and parking lot, putting them in the rear away from the nearby residences and adjoining the country club. The proposed Y. W. O. A. building is to be set back from North Street approximately 300 feet.
There was no direct proof from either side as to water supply or fire and police and sewerage protection. Considering the existing nearby uses, it could almost be assumed that these were present. The record shows that the matter had been discussed before the hearing with the Commissioners of Public Safety and Public Works and that neither had raised any objections or difficulties. The practice of the board requires notice to these Commissioners. Since there never was any issue as to water, fire, police and sewerage and since it appeared that the practice was followed of notifying the city officials so that they might object if they wished and that no such objection was made, it is not appropriate now to assert any supposed failure of proof in these respects. There never was any such issue at the hearing, so how could it be a ground for annulling the permit?
• The other board findings, required to be made and actually made, were that the permitted new building would be appropriately located as to transportation and would cause no undue traffic congestion or traffic hazard. We would suppose that these board members, with the facts either known to them (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, 287, supra) or presented at the hearing, could make common-sense judgments as to all these matters. Argument is made that there is a lack of transportation facilities. Appellants showed that a bus line passed the property whereupon respondents pointed out that the line ran only one; bus an hour. We think the ordinance means that an application may be denied if the proposed use is inappropriately located as to transportation services, but such a finding could not be made by the court as matter of law as to this site. Presumably the bus service will be increased if and when the demand justifies it and, meanwhile, no one knows how many of the young lady occupants of this club will drive their own cars. As to traffic conditions, the board on existing facts and probabilities could properly find that this use would *34 not “ cause undue traffic congestion or create a traffic hazard ” beyond those already existing. Every one of these controversies raised at most an issue of fact and judgment for the board. Conceivably, we could send the matter back to the board to amplify the findings to include the precise facts for which the members relied on their own sources of information (Matter of Community Synagogue v. Bates, 1 N Y 2d 445, 454) but it would be a useless formality since the facts were commonly known to everyone concerned.
This is the familar zoning case arising out of swiftly changing use patterns in a burgeoning Westchester County city. As someone remarked at the hearing, everyone wants churches, schools (and clubs) but not in his own neighborhood. Zoning boards of appeals are made up not of theoreticians or doctrinaire specialists but of representative citizens doing their best to make accommodations between conflicting community pressures (People ex rel. Fordham Manor Ref. Church v. Walsh, 244 N. Y. 280, supra). They had in mind the wishes of the neighbors as well as the community value of the Y. W. C. A. This record shows the care with which the problem was debated and disposed of by this board. For the court to overrule the board’s judgment was illegal and contrary to the settled and practical necessities of zoning procedure.
The order should be reversed, with costs.
Judges Dye, Froessel, Burke and Foster concur with Chief Judge Desmond ; Judges Fuld and Van Voorhis dissent and vote to affirm the unanimous order of the Appellate Division for the reasons stated in that court’s memorandum.
Order of the Appellate Division reversed and that of Special Term reinstated, with costs.