[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case was consolidated with Case #CV 93-0526547S,St. Vincent De Paul Society of Meriden, Inc. v. EastHartford Planning Zoning Commission, which is decided this date, per memorandum of decision filed by this court. Reference may be had to the memorandum of decision in that case for a more complete discussion of the background which forms the basis for this zoning appeal.
The Zoning Commission denied the application of the applicant St. Vincent De Paul to establish an emergency shelter for the homeless on May 26, 1993. The applicant St. Vincent De Paul Society wrote to the Commission requesting that the Commission reconsider its determination and to grant its application for special permit to construct and operate a homeless shelter at #381-385 Main Street, East Hartford, Connecticut.
The Zoning Regulations of the Town of East Hartford, Section 239.6, allow an "Emergency Shelter for the homeless operated by a non-profit corporation" as a special permit "in any zoning district." The Regulations, Sec. 239.6, sets forth four criteria, including the requirement that the shelter be located within 200 feet of a bus stop. CT Page 6177
This Court concluded, in Case #CV93-0526547S that the Commission acted within the scope of its authority in rejecting the original application on May 26, 1993, as there was a paucity of Commission experience and independent information to justify a granting of the application at that time, and that the Commission properly denied the application in that the applicant failed to satisfy the Commission that the proposed use satisfied the requirements of the regulation under the criteria required to be applied by the Commission in deciding said application.
The Commission properly noticed the public hearing on this renewed application, for November 10, 1993. The Commission voted unanimously to incorporate by reference the record of the hearing of May 12, 1993, concerning this request of St. Vincent De Paul Society for approval of the use of this site. The applicant determined not to itself present additional evidence, in part due to the apprehension that to do so may prejudice its then pending appeal of the May 26, 1993 "denial without prejudice." From a realistic standpoint, the applicant had presented its plan for the shelter in great detail in May, including its history of operating shelters, its customary stringent rules geared to the orderly and disciplined operating of such shelters, and its detailed construction plans referred to in Regulations Sec. 232.2 as the requisite Plan of Development.
In contrast to the May 1993 hearing, at which only five citizens appeared, and the Commission was left with very little citizen input or independent input or factual observation, this hearing generated great public participation. Views were made known, by the submitting of petitions by large numbers of the citizenry, both pro and con as to the particular location. With rare exception, the views of both pro and con was that a shelter was needed in East Hartford. The basic disagreement among the citizenry concerned whether the proposed shelter could co-exist with the surrounding neighborhood.
One citizen presented a factual observation of a shelter operated in another town which generated a substantial amount of loitering, drinking, alcohol and drug abuse. That facility was not operated by St. Vincent De CT Page 6178 Paul.
Conversely, one young citizen, together with other high school students, journeyed to Meriden, visited the St. Vincent De Paul facility at that location. They canvassed the neighborhood in Meriden, spoke with local residents and businessmen in that location, and reported to the Commission the observations of those Meriden citizens that that facility caused no local problems or disturbances, no loitering, no problems to citizens, and no evidence or history of diminished property values. These observations were concurred in by another citizen who professed familiarity with the St. Vincent De Paul facility in Meriden. A Mr. Atwood of the Congregational Church across the street, in East Hartford, related the Church's experience with their food bank, since 1982, and reported, "We have had no problems." Petitions were submitted by seventy-five percent of the residents of Kings Court, a residential facility adjacent to the proposed facility, expressing a lack of apprehension concerning the proposed facility. Other petitions expressed apprehension concerning the establishment of a homeless shelter at this location. The opponents expressed general apprehension as to loitering, panhandling, proximity of liquor outlets and the like, based upon a general fear of business disruption and diminishing of property values.
The distinction between the two hearings is dramatic. At the May hearing the board had before it the representation of the petitioner, and little else. At the November hearing the board had the benefit of factual observations of outside persons which supported the conclusion that the type of shelter for homeless women and children and homeless men can exist in harmony with the neighborhood provided it is operated in a disciplined, well ordered and affirmative fashion, and that the applicant had demonstrated by independent observation of the actual operation of a similar facility in Meriden that it had the ability and commitment to properly operate this type of facility.
The Commission voted five to zero to approve the application on November 17, 1993. The Commission imposed stringent conditions, providing for the filing of a security plan with the Police Department to discourage CT Page 6179 loitering, 24-hour a day identification of a responsible person, a nine member Shelter Neighborhood Advisory Committee of residents of the immediate neighborhood and twenty-four design and construction conditions required to be met as conditions of approval.
The plaintiff Harold Ahl filed this appeal. The Court finds that he is a statutorily aggrieved person, as he owns property which abuts the subject property. General Statutes § 8-8 (a)(1).
The plaintiff claims in the appeal that General Statutes § 8-7d requires that the Commission have a separate hearing to approve or disapprove the "plan of development" (Regulation 232-2) which the plaintiff refers to as a site plan or plan of development submitted in conjunction with an application for a Special Permit. General Statutes § 8-7d is appropriate where a site plan is "the only requirement to be met or remaining to be met", which was not the situation as pertains to this application.
The appropriate statute is General Statutes § 8-3c
which requires a hearing on the special permit application. The Plan of Development or Site Plan, is an integral part of most special permit applications under the zoning ordinances of most if not all of the zoning authorities in this state. Inherently the site plan or plan of development is part of the application and is able to be and expected to be addressed at the single public hearing, so that this plaintiff or any other person can raise any question he may have concerning the plan. The Court can locate nor envision any statutory or rational reason to have a second public hearing on the plan, as if it were a disassociated or disconnected part of the application. The public notice specifically alerted the public that the petition and maps relating to the application were on file in the office of the Town Clerk. As such they were available for prior review and were capable of being addressed at the public hearing, if the plaintiff or others determined to take issue with the plan on file.
The plaintiff confuses the requirement of General Statutes § 8-26 which requires a public hearing for CT Page 6180 subdivision plans with the provisions of General Statutes § 8-3c which does not require a specific and separate hearing for Special Permit development plans or site plans accompanying such application. This reason for appeal is not sustainable.
The plaintiff next alleges that the term "Emergency shelter for the homeless", as provided for in Regulations Section 239.6 is required to be specifically defined in the ordinance in order for the Commission to grant a special permit. The case cited by the plaintiff, Oliver v. ZoningCommission of the Town of Plainville, 31 Conn. Sup. 197,202, 203 (1974) does not state that proposition. Rather the Court determined that the undefined term "nursing home" was a question of fact to be determined by the Commission subject to review by the Court of the reasonableness of conclusion. See also Schwab v. Planning Zoning Board,155 Conn. 451, 454 (1967); Spero v. Zoning Board ofAppeals, 217 Conn. 435, 441 (1991).
The dictionary definition of shelter is "something that affords cover or protection"; of emergency is "an urgent need for assistance or relief." Webster's Ninth New Collegiate Dictionary, Merriam-Webster, Inc. The term "homeless" is of sufficient common understanding as to need no further articulation. The providing of emergency shelter for homeless men, women and children is precisely what the ordinance contemplates and what the proposed use seeks to achieve, and the use was thoroughly described by the applicant. The Commission clearly understood the use of the term as is set forth in the Regulations. The claim of error is not meritorious.
The plaintiff further claims that the Commission's approval was not based upon proper grounds, as the approval refers to the general purposes of the zoning regulations Sec. 100, to promote the . . . "general welfare of the community:" The plaintiff overlooks the fact that the Commission specifically found that "the proposed Special Permit Use is in compliance with the Zoning Regulations Section 239.6 and the 1990 adopted Plan of Development." The finding, by reference, incorporates the criteria of Article II which encompasses the particular criteria for Special Permit Uses. See Regulations Section 239.6. The fact that the proposed use conforms to the general purposes CT Page 6181 of the Regulations is surplusage bearing in mind the specific finding of Conformance with Regulation Sec. 239.6. Also see Whisper Wind Development Corp. v. Planning Zoning Commission, 229 Conn. 176 (1994). The Court finds this claim of error is not sustainable.
In filing the appeal, but not briefed or pursued, is the claim that the Commission failed to, consider 36 other alternative sites. The subject of this appeal is this site, not any other site. Further the record indicates that for several years other sites have been under consideration and that the present site clearly meets the criteria of the ordinance.
The plaintiff also claims, in general terms in the appeal, that the decision of the board is "arbitrary and capricious." This general allegation is not made more specific, other than as heretofore discussed and determined. Far from being arbitrary and capricious, the record clearly reflects that the Commission exercised careful and concerted judgment, based upon factual evidence and observations which substantiated the representation of the applicant, and after a full and open public hearing wherein all interested citizens were given the opportunity to express their observations, views, and comments, pro and con, to the Commission.
For the reasons set forth herein, the decision of the Planning Zoning Commission of the Town of East Hartford, granting the application, is affirmed, and accordingly the appeal is dismissed.
L. Paul Sullivan, J.