[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 9553
This case comes returns to this court on remand from the Supreme Court for the purpose of reviewing the record before the Fairfield Town Plan Zoning Commission (commission) to determine whether the commission properly considered all of the issues presented by General Statutes § 22a-19,[1] specifically whether the proposed subdivision plan would result in the unreasonable destruction of the natural resources of the environment. See Paige v. Town Plan ZoningCommission, 235 Conn. 448, 465, 668 A.2d 340 (1995).
"The record discloses the following undisputed facts. In July, 1991, the defendant Fairfield University (university) filed with the defendant Fairfield town plan and zoning commission (commission) an application to resubdivide a 13.41 acre wooded site into forty building lots along with an application for a special permit to excavate and fill the land. The plaintiffs, Anthony J. Paige and Candace D. Paige, who are property owners of lots that adjoin the subject property, filed a notice of intervention on behalf of the environment in accordance with § 22a-19 (a). They asserted a claim that approval of the application would have an adverse impact on the environment and, that, therefore, the university was required to file alternative plans for the commission's consideration. Specifically, the plaintiffs alleged that because the development of the subdivision would require clear-cutting of the subject acreage, the development would likely cause unreasonable pollution, impairment or destruction of the public trust in the air, water, wildlife and other natural resources of the state." (Footnote omitted.) Paige v. Town Plan Zoning Commission, supra, 235 Conn. 450-51. On October 25, 1991, after a public hearing, the commission approved the university's application subject to twenty conditions. Id., 451.
The plaintiffs appealed the commission's decision to the Superior Court pursuant to General Statutes § 8-8 (b). The court dismissed the plaintiffs' appeal holding, inter alia, that trees and wildlife are not natural resources under General Statutes § 22a-19 (a) and, therefore, that the commission was not obligated to comply with General Statutes § 22a-19 (b). The court agreed that trees and wildlife are natural resources in the generic sense. It did not find, however, that trees and wildlife are natural resources for the purposes of General CT Page 9554 Statutes § 22a-19. The court reasoned that the absence of clear legislative direction, either in the legislative history of General Statutes § 22a-19 or any other section of the Environmental Protection Act, militated against holding that trees and wildlife are natural resources subject to statutory protection. "In reaching that conclusion, th[is] . . . court relied on [the] decision involving agricultural land in RedHill Coalition, Inc. v. Town Plan Zoning Commission,212 Conn. 727, 563 A.2d 1347 (1989)." Paige v. Town Plan Zoning Commission, supra, 235 Conn. 452.
Following this court's dismissal of the appeal, the plaintiffs petitioned the Appellate Court for certification to appeal. Paige Town Plan Zoning Commission, 35 Conn. App. 646,647, 646 A.2d 277 (1994). The Appellate Court granted certification and affirmed the judgment of the trial court. The Appellate Court held that to be a "natural resource" under General Statutes § 22a-19 (a), property must have economic value. Id., 651. The Appellate Court adopted a definition of natural resources from Black's Law Dictionary which defined the term as "`[a]ny material in its native state which when extracted has economic value. Timberland, oil and gas wells, ore deposits, and other products of nature that have economic value.' Black'sLaw Dictionary (6th Ed. 1990)." Ibid. The Appellate Court, after reviewing the record, determined that there had been "no evidence that the subdivision area had economic value." Id., 653. The Appellate Court held that because trees and wildlife had no proven economic value, they were not natural resources under § 22a-19 (a). Paige v. Town Plan ZoningCommission, supra, 235 Conn. 454. Therefore, the Appellate Court concluded that General Statutes § 22a-19 (b), which would have required the university to propose, and the commission to consider, feasible alternatives to the subdivision project, did not apply and affirmed the judgment of the trial court.
The Supreme Court granted the plaintiffs' petition for certification and reversed. The Supreme Court held that trees and wildlife are natural resources regardless of their economic value, reversed the judgment of the Appellate Court and remanded the case to the Superior Court to consider whether the commission properly applied § 22a-19. Paige v. Town Plan ZoningCommission, supra, 235 Conn. 454.[2]
The Supreme Court noted that the trial court "had no occasion to review the record in order to decide whether the commission CT Page 9555 had considered the plaintiffs' claim that the subdivision unreasonably would impact adversely the natural resources of the state." Id., 452-53. The Supreme Court stated that "[i]n concluding, incorrectly, that trees and wildlife are not natural resources protected by the statute, and that, consequently, the commission was not obligated to consider alternatives to their elimination, the trial court never fulfilled its responsibility to search the record in order to determine whether a basis for the commission's decision existed." Id., 465. The Supreme Court remanded the case to this court for determination, after a review of the record, of the following: "[W]hether the commission properly considered all of the issues presented by § 22a-19
(a) and (b), particularly whether the university's subdivision plan would result in the unreasonable destruction of the environment so as to require the commission to consider alternatives." Ibid. This court takes the reference to "environment" to mean trees and wildlife, the two principle matters raised by the plaintiffs at the public hearing.
The court finds that there is substantial evidence in the record showing that the commission considered the potential impact of the subdivision on trees and reasonably concluded that the university's plan would not cause unreasonable destruction to those trees. The court finds that there is not substantial evidence in the record that the commission considered the impairment or destruction of wildlife.
In general, "[j]udicial review of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . ." CHRO v. Truelove andMaclean, Inc., 238 Conn. 337, 352, 680 A.2d 1261 (1996). It is a settled principle that the plaintiff shoulders the burden of proof when challenging a decision of an administrative agency.Newtown v. Keeney, 234 Conn. 312, 319, 661 A.2d 589 (1995). "The plaintiff must do more than simply show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo; Calandro v. Zoning Commission, 176 Conn. 439,440, 408 A.2d 229 (1979); the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision. Feinson v. ConservationCommission, 180 Conn. 421, 425, 429 A.2d 910 (1980)."Samperi v. Inland Wetlands Agency, 226 Conn. 579, 587, CT Page 9556628 A.2d 1286 (1993). "Should substantial evidence exist in the record to support any basis or stated reason for the agency's decision, the court must sustain the decision. DeBeradinis v.Zoning Commission, supra, [228 Conn.] 199; Primerica v.Planning Zoning Commission, 211 Conn. 85, 96, 558 A.2d 646
(1989)." Keiser v. Conservation Commission, 41 Conn. App. 39,41, 674 A.2d 439 (1996).
"`Th[e] . . . substantial evidence rule is similar to the sufficiency of the evidence standard applied in judicial review of jury verdicts, and evidence is sufficient to sustain an agency finding if it affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . [I]t imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and to provide a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. [S]ubstantial evidence in the directed verdict formulation . . . is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . .' (Citations omitted; internal quotation marks omitted.) Newtown v. Keeney, supra,234 Conn. 319-20." Keiser v. Conservation Commission, supra, 41 Conn. App. 42.
The issue on remand requires the court to confront the knotty issue as to when there is not substantial evidence that a land use board considered something. In addressing this issue, "[i]t must be borne in mind, however, that we are dealing with a group of laymen who may not always express themselves with the nicety of a Philadelphia lawyer. Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Couch v. Zoning Commission, 141 Conn. 349,358, 106 A.2d 173 (1954). "It is too much to expect that laymen serving gratuitously on local administrative bodies will prepare with meticulous detail a finding of facts and ultimate conclusions after the manner of courts of law. However, where a board is acting pursuant to a statute or an ordinance which requires a specific finding made after a consideration of enumerated factors, the minutes of the board should show that due consideration was given to those factors and that the conclusion reached was within the power given to the board. See Woodfordv. Zoning Commission, 147 Conn. 30, 31, 156 A.2d 470 [1959], CT Page 9557 and cases cited." Dubiel v. Zoning Board of Appeals,147 Conn. 517, 522-23, 162 A.2d 711 (1960).
General Statutes § 22a-19 does not require the commission to make a specific finding. Rather, the statute provides that the commission "shall consider" certain factors. Land use statutes requiring that an administrative agency or officer "shall consider" certain factors or criteria are necessarily legion. See, e.g. General Statutes §§ 8-2, 8-23(a), (b), 8-26,8-41(b), 22a-2a(c), 22a-6b, 22a-6e, 22a-33, 22a-41(b), 22a-42a,22a-44, 22a-103, 22a-113a, 22a-113p, 22a-121, 22a-122, 22a-126,22a-128, 22a-133d(b), 22a-1631(b), 22a-208a, 22a-208dI(2),22a-208p, 22a-220a, 22a-225(d), 22a-227, 22a-266(b), 22a-340,22a-354i(b), 22a-354m, 22a-373(b), (c), 22a-423, 22a-430, 22a-436,22a-471. In Lizotte v. Conservation Commission, 216 Conn. 320,35-336, 79 A.2d 1044 (1990), the Supreme Court, speaking of related environmental statutes stated: "In the absence of anyevidence to the contrary, we will presume that the commission fulfilled, when it adopted the regulation, its statutory obligations set forth in §§ 22a-41 and 22a-42
(e)."[3] (Emphasis added.)
The reference in Lizotte to "evidence to the contrary" obviously does not refer to evidence as it ordinarily would be presented in a civil action. Indeed, where, as here, the commission made no reference in its decision to trees of wildlife[4], it would be improper to call members of the commission into court to testify as to whether they considered certain matters in casting their respective votes. SeeAdriani v. Commission of Human Rights Opportunities,228 Conn. 545, 550-551, 636 A.2d 1360 (1994); Gold v.Warden, 222 Conn. 312, 339 n. 11, 610 A.2d 1153 (1992);Martone v. Lensink, 215 Conn. 49, 54, 574 A.2d 803
(1990); Henderson v. Department of Motor Vehicles,202 Conn. 453, 459, 521 A.2d 1040 (1987). Rather, in determining whether a land use agency failed to consider required factors, the court must search the record for circumstantial evidence of what the board considered. See, e.g., First Hartford RealtyCorp. v. Planning Zoning Commission, 165 Conn. 533, 542,338 A.2d 490 (1973); Cadoux v. Planning ZoningCT Page 9558Commission, 162 Conn. 425, 429-430, 294 A.2d 582 (1972);Jeffrey v. Planning Zoning Board, 155 Conn. 451,459-460, 232 A.2d 497 (1967); Fenn v. Planning ZoningCommission, 24 Conn. App. 430, 436, 589 A.2d 3, 219 Conn. 908,593 A.2d 133 (1991); A.D.A.M. Land Development Corp. v.Conservation Commission, 21 Conn. App. 122, 125-126,572 A.2d 364 (1990); Intervale Homeowners Assn. v. EnvironmentalProtection Board, 19 Conn. App. 334, 337, 562 A.2d 536
(1989); cf. Timber Trails Corp. v. Planning ZoningCommission, 222 Conn. 380, 398-400, 610 A.2d 620
(1992) (substantial evidence to support the commission's "implicit finding"). Such an obviously unscientific endeavor is not the same inquiry which the court must make in determining whether there is substantial evidence to support a decision of an administrative agency. As this case demonstrates infra, that evidence as to a matter involving unreasonable pollution impairment or destruction of a natural resource was presented cannot necessarily or logically mean that the administrative agency considered that matter in reaching its decision.
 II
The court must examine the record to determine whether there is evidence that the commission did, in fact, consider the potential adverse impact of the subdivision plan on trees and wildlife. The court finds that the commission did consider the potential impact on trees.
 A.
First, evidence that the commission considered the impact on tress is demonstrated by the conditions it imposed upon the subdivision approval.[5] Several of the conditions proposed by the commission address the protection of trees. There are conditions preventing the removal of certain trees within twenty foot strips of property by way of deed covenant and others providing protection for trees of a certain maturity. These conditions demonstrate this commission's concern with the issue of trees. See Jeffrey v. Planning Zoning Board, supra, 155 Conn. 459. For example, the language of the conditions refers to buffer zone requirements, prior approval of landscaping and tree removal plans, use of berming, additional plantings, and protection of existing trees during construction.
Second, the transcript of the public hearing reveals that CT Page 9559 environmental issues were considered by the commission. In addition to the testimonies of Candace D. Paige, and her expert, Mylan Bull, dealing with § 22a-19 issues, there is support that the commissioners themselves discussed trees at the hearing. Commissioner Hinckley began by raising the issue of "wooded areas." Commissioner Lang inquired about protection and "buffer zones." Commissioner Saxl also inquired about buffering on lots 1 through 12 and suggested putting in "hemlocks or something" to increase buffering. Commissioner Lang, discussing the issue of trees, stated: "What would be the University's response to really taking a look at, I mean there are trees on there now, I mean we've had subdivisions in this town now, and I guess the best one that comes to mind is the Sarah Woods where you used to drive up Hulls Highway and there were trees, and a subdivision goes in and poof! There's nothing but a lot of dirt. . . . [W]e're going to have these houses with no trees, no buffering, nothing from the road as you go by." Later, Attorney John Fallon, the lawyer for the university, was questioned as to whether the university would be willing to file a restrictive covenant on the land records in order to protect the trees.
Third, the record reflects that the commission considered the issue of trees and wildlife outside the public hearing. Commissioner Carter presented a motion to the commission. In that motion she stated: "Fairfield University is a wonderful educational institution. They teach a broad range of liberal arts which hopefully addresses ethics and speaks to moral judgments. This proposed development is a very poor example. The site has been squeezed for every dollar and is a rape of 13 acres. There is no way the proposed development can be carried out without taking done [sic] virtually every tree."
Fourth, § 1.1.3 of the Fairfield subdivision regulations requires: "A preliminary map shall be submitted showing . . . the location of principal wooded areas." Fairfield University did not comply with this regulation, and that omission was made a ground of appeal. The Appellate court found that "Fairfield University conceded at the public hearing held by the commission that the land was 80 percent wooded. Thus, the commission knew that virtually the entire property was wooded." Paige v. Planning Zoning Commission, supra, 35 Conn. App. 659-660. The existence of the subdivision regulation enacted by the commission is some evidence of its awareness that the removal of trees is a relevant matter in subdivision review. CT Page 9560
For these reasons, the court finds that there is substantial evidence that the commission considered the potential adverse impact of the subdivision plan on the trees in the subdivision.
 B.
There was substantial evidence by opponents of the plan of the hostile consequences which would befall wildlife if the plan were approved.[6] However, there is no evidence that the commission considered the potential adverse affect of the subdivision plan on wildlife. This finding is based on six factors.
First, it is worthy of note that the court's finding that the commission considered the impact of the subdivision plan on trees is not inconsistent with a finding that the commission did not consider wildlife. Trees and wildlife, though raised together in this appeal, are, of course, very different things. "Trees and wildlife" is not a phrase which can be considered unitary. Compare Bordonaro v. Senk, 109 Conn. 428, 430-31,147 A. 136 (1929).
Second, it is significant that this was a case of first impression. No reported opinion in this state had ever held that wildlife were a natural resource. To impute to the commission the knowledge that wildlife were natural resources would be ascribing a clairvoyance to that body which a majority of the Appellate Court panel, as well as this court, lacked.
Third, no member of the commission discussed wildlife at the public hearing. Fourth, wildlife was not discussed at the commission's business meetings. Fifth, there was no commission staff discussion or staff input concerning wildlife. Sixth, the commission did not impose any conditions or modifications relating to wildlife.
To find that the commission considered wildlife simply because opponents of the subdivision plan spoke of wildlife would be indulging in an aimless fiction, ignoring the reality of the record as a whole, and eviscerating the plaintiffs' right to meaningful review.
 III
In addition, pursuant to the Supreme Court's mandate, the CT Page 9561 court must determine, whether the commission reasonably concluded, by way of implicit finding; see note 4, supra; that the university's subdivision plan would not result in the unreasonable destruction of the environment. Since the commission considered only trees and not wildlife, this discussion is limited to the former.
The plaintiffs were required to establish a prima facie case that the university is reasonably likely to unreasonably pollute, impair or destroy a natural resource. ManchesterEnvironmental Coalition v. Stockton, 184 Conn. 51, 57-58,441 A.2d 68 (1981).
Although the plaintiffs attempted to establish a prima facie case, it can be inferred that the commission rejected the plaintiffs' showing. "`"In determining whether an administrative finding is supported by `substantial evidence', a court must defer to the agency's assessment of the credibility of the witnesses . . . even an expert, in whole or in part."Gardiner v. Conservation Commission, 222 Conn. 98, 108,608 A.2d 672 (1992), quoting Briggs v. State EmployeesRetirement Commission, 210 Conn. 214, 217, 554 A.2d 229
(1989)." Woodburn v. Conservation Commission, 37 Conn. App. 166,172, 655 A.2d 764 (1995). When reviewing a record, the court "cannot substitute its judgment as to the weight of the evidence for that of the commission." Whisper WindDevelopment Corp. v. Plan Zoning Commission, 32 Conn. App. 515,523, 630 A.2d 108 (1993), affirmed per curiam, 229 Conn. 176,640 A.2d 100 (1994). The court must defer to the commission's "implicit finding"; Timber Trails Corporationv. Planning Zoning Commission, supra, 222 Conn. 400; that the evidence presented by the plaintiffs did not prove a reasonable likelihood that the university's plan as modified by the commission's conditions would unreasonably destroy the subject property's trees. See Jeffrey v. Planning ZoningCommission, supra, 155 Conn. 459. The court finds that the commission's decision was reasonable and supported by substantial evidence in the record.[7]
Because the commission did not consider the destruction to wildlife presented by the university's subdivision plan, it must do so on remand. The appeal is sustained.
Bruce L. Levin Judge of the Superior Court CT Page 9562