[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an appeal by abutting owners and owners with property within 100 feet of premises situated in the downtown business district of Fairfield at the corner of the Post Road and Reef Road. The land subject to the appeal is improved with a two story building containing 56,852 square feet which for many years had been devoted primarily to retail use but which at the time of the application had been vacant for almost two years.
The defendant, Starwood Ceruzzi Fairfield LLC, applied to the Fairfield Town Plan and Zoning Commission for special permits on behalf of itself and the record owners of three separate properties which comprise the premises subject to appeal. The first applications sought approval for (i) demolition of the existing building, except for a portion of the front wall, and (ii) construction of a two story building to contain 79,144 CT Page 4703 square feet of floor space, together with a one story parking deck.[1] The second application sought approval for excavation and earth removal incident to the construction project. The property is located in the center designed business district which permits retail and business office use by special exception only. (§ 12, Fairfield Zoning Regulations).
After a public hearing the Commission granted the application making seven findings and imposing five conditions.
Aggrievement
The record reveals that the sole remaining plaintiff in the DeMartin Properties case is Douglas H. Munson, all other plaintiffs having withdrawn their appeals. The court finds that Mr. Munson is aggrieved by virtue of his status as an abutting property owner and that the plaintiffs, Dante Galucchi and Charles L. DeSiena are aggrieved because their real property lies within a radius of 100 feet of the property subject to this appeal. G.S. § 8-8(1). Goldfeld v. Planning and ZoningCommission 3 Conn. App. 72 (1986).
The DeMartin Properties Case
The plaintiff's complaint breaks down into three basic lines of attack, viz: (i) incompatibility of the project with the neighborhood; (ii) inadequacy of off-street parking; (iii) invalidity of the special permit application. Initially, the court notes that the plaintiff's trial brief omits not only discussion of but fails even to mention any issue other than the claimed inadequacy of the off-street parking. Accordingly, all issues other than off-street parking are deemed abandoned.Hartford Realty Corp. v. Planning and Zoning Commission,165 Conn. 533, 535 (1973).
The defendants urge the court to limit its review of the Commission's action with respect to the adequacy of off-street parking to a single aspect of the Fairfield Zoning Regulations, namely, whether the regulations permit the applicant to include in the required number of spaces, 65 spaces to be licensed to the town of Fairfield and six spaces to be leased from an adjoining property owner. The court disagrees that the scope of review should be so limited. Paragraph 14C of the complaint alleges "that the application will allow the building of an edifice for which defendants have failed to provide the parking required by the CT Page 4704 Fairfield Zoning regulations." The court deems this allegation broad enough to embrace all of the claims made in the plaintiff's brief.
The court's review is guided by long familiar principles. In determining whether a Zoning commission acted illegally, arbitrarily or in abuse of its discretion the court must be satisfied that the proposed use is expressly permitted and that the standards set forth in the regulations are satisfied. If so, acting in an administrative capacity, the commission was bound to grant the permit. A.P. W. Holding Corp. v. Zoning Board,167 Conn. 182, 185 (1974). The plaintiff attacks the commission's action for illegality and abuse of discretion. He argues that the commission did not exercise "honest and fair judgment" in interpreting and applying its own regulations.
The court's review of a zoning authority's power to interpret and apply its own regulations begins with the fundamental proposition that because the regulations themselves, § 2-30) duly adopted by the commission, charge the commission with the duty of their administration and enforcement, the commission itself is the official interpreter of those regulations, subject only to judicial review. Griffin v. Commission on Hospitals Healthcare, 200 Conn. 489, 496 (1986). This court must accord deference to the construction given a statute by the agency charged with its enforcement. Anderson v. Ludgin, 175 Conn. 545, 555 (1978). This principle applies with even greater force to an agency's interpretation of its own duly adopted regulations. Griffin v.Commission on Hospital Healthy Care, supra at 497.
"Generally, it is the function of the zoning board or commission to decide within prescribed limits and consistent with the exercise of [its] legal discretion, whether a particular section of the zoning regulations applies to a given situation and the manner in which it does apply." Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152 1988). This does not mean that the court must abdicate its adjudicative function in interpreting the law, but it does mean that where there are different but equally plausible interpretations of a statute or regulation, the court must give due deference to that followed by the administrative agency concerned. Starr v. Commissioner ofEnvironmental Protection, 226 Conn. 358, 376 (1993).
 I CT Page 4705
The plaintiff's initial argument is that where there is a mixed use in a building, i.e. office and retail, § 28-8 of the regulations requires that the parking requirements that would produce the larger number of spaces apply. The record does not indicate explicitly whether or not the commission rejected this interpretation. Assuming that the plaintiff's perception that it did is correct, it is apparent that the plaintiff has misconstrued the meaning and purpose of § 28-8. This provision applies not to different uses in a single building but rather to different zonal classifications. Section 1.3 provides that . . . the "Town of Fairfield is hereby divided into the following classes of districts." (Emphasis added). Thus, the first sentence of § 28.8 refers to (2) or more zoning classifications which apply to a property not to (2) or more uses. The latter subject is governed by the second sentence of § 28.8 which applies to the dual use proposed here, viz; office and retail. The use and not the zonal classification determines the parking requirements in such a situation
There is yet another reason why the plaintiff's interpretation is incorrect. The existing building is legally nonconforming as to 140 parking spaces. The building area which is proposed to be added to the existing building necessitates additional spaces. Section 28.2 provides that "additional spaces shall be provided for the new use in accordance with these parking regulations". This language evinces a clear legislative intent to preserve the past and apply the present regulations to the new use. Further analysis of § 28.2 follows, infra.
Next, the plaintiff attacks inclusion of 65 spaces which are licensed to the Town of Fairfield and six spaces which belong to an adjoining owner. The plaintiff predicates his argument on the language of § 28.2 of the regulations which requires that off-street parking spaces be "permanently maintained and made available for occupancy in connection with and for the full duration of the use." (Emphasis added). Assuming arguendo, that these spaces are necessary for the applicants to fulfill their parking requirement, there is nothing in this language which mandates that the spaces be made available exclusively for the use which they are intended to serve. In fact, the plaintiff does not claim that the spaces are dedicated to the town's exclusive use. The plaintiff miscasts the legal relationship between the town and the applicant, asserting that the applicant has leased
65 spaces to the town for general municipal parking which will enable anyone wishing to park in the spaces to displace patrons CT Page 4706 of the applicant's establishment. The record reveals that the developer has not in fact leased but has granted a license to the town for ten years, revocable under certain conditions not herein material. A lease transfers an estate in real property to a tenant for a stated period, with a reversion in the owner after that stated period expires. Joe-Mark Sand Gravel Co. v.Pantanella, 139 Conn. 598, 601 (1953). A license is defined as "a personal unassignable, and ordinarily revocable privilege for the doing of one or more acts on land without possessing any estate therein". Ballantine's Law Dictionary 3rd Ed. at 736 (1969).
Such an arrangement is wholly consistent with the spirit, if not the letter of § 28. Section 28.6 requires that all spaces be under the same ownership as the building which the spaces serve. Section 28.9 contemplates that in certain cases spaces will be shared by two or more uses, thus evincing a legislative intent that militates against the concept of exclusivity. Indeed, the record shows that all spaces utilized by the office component of the occupancy will be readily available to the town when the offices are closed.
The plaintiff's next claim is that the commission illegally approved six spaces located on contiguous land owned by one Carol Manasevit. Citing § 28.6, the plaintiff argues that in order for these spaces to be included they must be located on land in the same fee simple ownership as that of the applicant. The court disagrees. Section 28.6 provides that "off-street parking spaces, all of which must be on the same lot or contiguous lots under the same ownership as the building or structures". This language does not require that the spaces be located on the very same property as the use which they serve. Instead, it means that the spaces may be on a lot which is contiguous to the use which it serves as long as the spaces are owned by the same entity that owns the building or structure which the spaces cannot serve while they are serving the contiguous use. Moreover, as pointed out, above § 28.9 permits joint usage of abutting properties for parking, subject to special permit. The fact that the six Manasevit spaces exist only as a result of a variance granted by the Fairfield Zoning Board of Appeals does not affect the parties' right to invoke the benefits of § 28.9.
The plaintiff next argues that omission of Carol Manasevit's name from the special permit application as required by § 25.2.1 constitutes a fatal defect in the application. The plaintiff has CT Page 4707 offered no analysis whatsoever as to whether such an omission constitutes a jurisdictional defect or whether the requirement is mandatory or directory. Omission of a name called for on an application does not render the application fatally defective if the person whose name was omitted gave consent to the applicant to use his name before the zoning authority and therefore, to use his property in the manner specified. DiBonaventura v. ZoningBoard of Appeals, 24 Conn. App. 369, 376 (1991). Finally, as will appear infra, exclusion of six spaces from the calculations could not change the result anyway.
The plaintiff next goes on to challenge the applicant's double invocation of the 1500 square foot credit provision accorded to retail space by § 28.6.7. Again, as will appear infra, even if the plaintiff were correct in his application of § 28.6.7, it makes no difference in the result reached by the Commission.
Lastly, the plaintiff argues that demolition of all but 192 feet of the facade of the existing building will cause the building to lose its legally non conforming status, thereby requiring the entire building to conform to the present parking regulations. The net effect of present day compliance would place the total number of parking spaces substantially in excess of the 289 spaces proposed.
Relying on the provisions of § 2.8.2[2] he argues that once the building is demolished the replacement use must comply with the regulations. Such is simply not the case. A building is not brought into compliance until it is constructed in accordance with current regulations. Secondly, no building loses its non conformity solely as a result of temporal non use without regard to the intent of the property owner to maintain that use. G. S. § 8.2(a). Here, it is obvious from the retention of the 192 foot facade that the owner's intent is emphatically not to allow the building to lose its nonconforming status. The plaintiff's further reliance on § 2.10 is likewise unavailing because by its terms it applies to damage caused by fire or other casualty.[3]
Finally, the plaintiff's invocation of § 2.9 the regulations is likewise unavailing because the plaintiff misconstrues the scope of the regulation. When this section requires conformity to "all the requirements of the zoning regulations" it means all regulations which are applicable by their own terms. The plaintiff's interpretation that a nonconforming use may not be CT Page 4708 enlarged unless the nonconforming component is brought into conformity with the zoning regulations flies in the face of § 8.2 (a) which proscribes any regulation which prohibits the continuance of a conforming use, building or structure.
The defendants argue that the parking issue is governed by § 28.2 of the zoning regulations. The court agrees. Section 28.2 provides in pertinent part as follows: "If any existing use of land, buildings and other structures is changed to a use requiring additional off-street parking and loading spaces to comply with these parking regulations, the additional spaces shall be provided for the new use accordance with these parking regulations. Any existing use which does not conform to these parking regulations shall not be changed to a use which would need additional off-street parking and loading spaces to comply with these parking regulations, unless such additional spaces are provided." (Emphasis supplied)
The plaintiff does not acknowledge the applicability of this section of the regulations because he contends that once the existing building is demolished there is no existing use remaining to which a new use is being added. For the reasons stated above this reasoning is flawed. Because the legally nonconforming status of the former building as to off-street parking is not relinquished by its demolition, the parking spaces retain their viability as legally nonconforming in number. Consequently, the new building will include the equivalent floor space (56,852 sq. ft.) contained in the old building plus additional floor space (23,892 sq. ft.) contained in the newly enlarged building.
As the defendants point out, the key word in § 28.2 is "additional". Clearly, the intent of this section is that only the "new use" be required to augment the parking that was provided for the preexisting use. In other words, the plaintiff is entitled to a credit of 140 spaces against the parking requirements of the new and enlarged replacement building, and must provide additional spaces in conformity with current regulations for all new floor space created in excess of that contained in that original building.
The plaintiff has calculated the number of parking spaces required under the regulations to be a minimum of 318. The applicant proposes to build 289; the Commission found that the project only needs 220. In the final analysis, the issue is CT Page 4709 whether the plaintiff has sustained his burden of proof that the Commission acted illegally or in abuse of its discretion in approving the application. Whittaker v. Trumbull Zoning Board ofAppeals, 179 Conn. 650 (1980). The court finds that it has not.
The DiSiena/Galucci Appeal Case II
The plaintiffs Charles DiSiena and Dante R. Galucci allege several additional infirmities in the defendant's action. First, they challenge the adequacy of the defendant's assigned reasons given in support of their approval, claiming that they are "boiler plate" and nonspecific. The short answer to this is that the statutory requirements set forth in § 8-3(c) that the commission state the reason(s) for its decision is directory and not mandatory. A. P. W. Holding Corp. v. Planning Board, supra. Therefore, the omission of reasons of any kind would not, in and of itself, invalidate the Commission's action. Notwithstanding, the Commission assigned seven separate reasons why the application satisfied the requirements of § 25.7 of the regulations.
These plaintiffs focus on reason 6, § 25.7.7 which reads as follows:
 The development shown on the site and architectural plans are of such a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values in the neighborhood, to preserve and enhance the appearance and beauty of the community, and to avoid undo traffic congestion.
These plaintiffs challenge this finding first by mischaracterizing the parking facility as a "two-level parking garage" when the record clearly shows that the garage will contain one level at grade and the second level at approximately 18 feet in height at the roof line. The structure will be 310 feet long and 165 feet wide. The plaintiffs describe its size as "over a football field in length", complaining that its size is out of character with the neighborhood and detracts from the value of their property. The Commission's findings to the contrary are adequately supported by the record. CT Page 4710
Preliminary, it is noted that the plaintiffs own and occupy a professional office building at #2 Sherman Court which itself is located in the same zonal classification as the subject property (center designed district). The record reveals that the Commission had before it the testimony of the applicant's architect, Dominick Mancino who stated the following: "The intention is that the parking facility will present the facade of all its perimeters with the least possible height. For the rest of the building we're trying to make it look like a one story building, you don't see the cars, there [is] a perimeter wall around the garage that is 3 1/2 feet tall and anyone in [a] car driving by or even pedestrians from across the road have a very difficult time seeing a vast number of automobiles. You don't even see the tops of the autos even from across the street on Sherman Street . . . so our whole [attention (sic)] is to make it appear as a one-story facade aesthetically."
The commission also had architectural drawings showing building elevations from which the commission could reasonably have concluded that the parking deck when constructed would be nine feet shorter in height than a 2 1/2 story dwelling.
It is abundantly clear that the record amply supports the Commission's finding that all of the special exception standards set forth in § 25.7 have been met. Jeffrey v. Planning and ZoningBoard of Appeals, 155 Conn. 451 (1967).
Next, the plaintiffs claim that this approval violates the comprehensive plan for the town but goes onto to quote from the Town Plan of Development. The plaintiffs have confused the two plans. A comprehensive plan is not the same as a master plan. The former is found in the scheme of the zoning regulations themselves and is controlling, Forrest Construction, Co. v.Planning and Zoning Commission, 155 Conn. 669 (1967), whereas a plan of development or master plan is advisory only. FirstHartford Realty Corp. v. Planning Zoning Commission, supra at 542. There was ample evidence in the record to support the Commission's finding that the project conforms to the purpose and intent of the plan of development.
There is absolutely nothing in the record to support the claim that duress or "politics" had any influence on the Commission. The plaintiff did not seek to offer evidence of bias, or conflict of interest or improper motives outside of the record although they had a right to petition the court for permission to CT Page 4711 do so. Marmah Inc., v. Greenwich, 176 Conn. 116 (1978) Section8-8(k).
Next, the plaintiffs' vague reference to being deprived of the right to be heard is unaccompanied by a claim of prejudice or any legal analysis and is wholly unsupported by the record. In fact, the record reveals that these plaintiffs were not even present at the hearing either in person or by counsel. On the contrary, the court is persuaded that these plaintiffs had adequate and fair opportunity to present their objections to the project.
The plaintiffs' final two claims which have not yet been considered are a) that the defendants did not act in the best interest of the community and b) that the decision was not reasonably based on the record. As stated above, zoning commissions consideration of an application or special exception is strictly limited to assuring that 1) the proposed use is expressly permitted under the regulations, 2) the standards set forth in the regulations are satisfied. Lawrence v. Zoning Boardof Appeals, 158 Conn. 509 (1979). That having been done, the Commission lacks discretion to deny the permit. It is noted that "best interest of the community" is not included as a special exception standard in § 27 of the regulations. Thus, there is no legal basis for such a claim. Claim (b) above has been disposed of earlier in this opinion.
For the foregoing reasons the Court finds that the Fairfield Plan and Zoning Commission did not act illegally, arbitrarily or in abuse of its discretion in granting the special exception. Accordingly the appeal is dismissed.
THE COURT,
Mottolese, Judge