St. John's Roman Catholic Church Corporation
*v.* Town of Darien et al.

Baldwin, C. J., King, Murphy, Shea and Alcorn, Js.

Argued June 5—decided July 27, 1962

*James J. O'Connell* and *Thomas J. Dolan,* with whom, on the brief, was *Albert L. Coles,* for the plaintiff.

*Warrack Wallace,* with whom were *Daniel B. Badger* and, on the brief, *Emile W. Jacques, Jr.,* for the defendants.

ALCORN, J. The zoning regulations of the town of Darien provide for an R-2 residence zone in which the permitted uses are (1) a single, detached dwelling on its own lot for not more than one family and (2) public schools. Additional uses are permitted in that zone if a special permit therefor is issued by the planning and zoning commission. Among these additional permitted uses are "parochial and private schools." Darien Zoning Regs., p. 35 (1957). The property owner contemplating a use requiring a special permit must submit a plan of the proposed development, accompanied by an application for the permit, to the planning and zoning commission, which, after public notice and hearing, is authorized to issue the permit under certain conditions. The pertinent provisions of the zoning regulations are set forth in the footnote.[1]

---

[1] "[Darien Zoning Regs. (1957)] Section 440. PERMITTED SPECIAL USES.

"441. GENERAL PROVISION. The type of uses for which conformance to additional standards is required by these Regulations shall be deemed to be permitted uses in their respective zones, subject to the satisfaction of the requirements and standards set forth herein, in addition to all other requirements of these Regulations. All such uses are declared to possess characteristics of such unique and special forms that each specific use shall be considered as an individual case.

"442. PLAN REQUIRED. A plan for a proposed development of a site for a permitted use shall be submitted with an application for a special permit, and shall show the location of all buildings, parking

The plaintiff owns a 10.8-acre tract of land in an R-2 residence zone. Wishing to erect a parochial school on the property, it applied for a special permit. After public notice and hearing, the planning and zoning commission denied the application, and the plaintiff appealed to the Court of Common Pleas. On the same date, the plaintiff brought the present action for a declaratory judgment. The basis of the appeal from the action of the planning and zoning commission was that it had acted illegally, arbitrarily and in abuse of the discretion vested in it. The appeal, after a hearing, was dismissed by the Court of Common Pleas. *St. John's Roman Catholic Church Corporation* v. *Planning*

---

areas, traffic access and circulation drives, open spaces, landscaping, and any other pertinent information.

"443. APPLICATION FOR SPECIAL PERMIT. Application for required special permits shall be made to the Planning and Zoning Commission as specifically provided hereinafter. The Planning and Zoning Commission may, after public notice and hearing, in the same manner as required by law for zoning amendments, authorize the issuance of said permits provided it shall find that:

"443.1. The location and size of the use, the nature and intensity of the operations involved in or conducted in connection with it, the size of the site in relation thereto, and the location of the site with respect to streets giving access to it, shall be such that it will be in harmony with the appropriate and orderly development of the district in which it is located.

"443.2. The location, nature and height of buildings, walls and fences, and the nature and extent of landscaping on the site, shall be such that the use will not hinder or discourage the appropriate development and use of adjacent land and buildings, or impair the value thereof.

"443.3. Parking area or areas shall be of adequate size for the particular use and shall be suitably screened from adjoining residential uses, and the entrance and exit drives shall be laid out so as to prevent traffic hazards and nuisance.

"443.4. CONDITIONS AND SAFEGUARDS. In granting a special permit, the Commission shall attach such conditions and safeguards as may be required to protect the public health, safety and general welfare and to insure continued compliance with these Regulations."

*& Zoning Commission,* Court of Common Pleas, Fairfield County at Stamford, No. 2117. The court decided, in substance, that the zoning regulations set forth prescribed conditions which must be satisfied in order to justify the granting of a special permit and that the record was devoid of proof that the plaintiff had established the necessary requirements. It was conceded that the plaintiff did not question the constitutionality of the zoning regulations in that action. The court was aware of the pendency of the present action in which the question of constitutionality is raised. No appeal was taken from the judgment of the Court of Common Pleas, and consequently the failure of the plaintiff to establish the necessary basis for the issuance of a special permit under the facts then presented has been conclusively determined.

Following that final judgment, the plaintiff proceeded with the present action, in which it seeks injunctive relief and a declaratory judgment determining whether the provisions of the zoning regulations requiring a special permit are valid and binding or are invalid, null and void. The questions reserved for our advice on a stipulation of facts are: "[1] Is there, on the facts . . . stated, an existing dispute or controversy sufficient to give the Court jurisdiction to render a declaratory judgment in this cause, and if so: [2] Are the Special Permit Regulations of the Town of Darien, being sections 440 to 443.4, inclusive, unconstitutional and void because they deprive plaintiff of its property without due process of law or deny plaintiff equal protection of the laws contrary to the provisions of Article First, Section 9, of the Constitution of the State of Connecticut and to Amendments Five and Fourteen of the Constitution of the United States of America;

or because they are an infringement on the right of free exercise of religion and the right to impart and receive religious instruction and education contrary to the provisions of Article First, Sections 3 and 4 and Article Seventh of the Constitution of the State of Connecticut and to Amendment Fourteen of the Constitution of the United States of America; or because they have no reasonable relationship to the purposes of zoning and fail to set up adequate standards of administration?"

We turn first to the question whether the issue now raised is the proper subject of a declaratory judgment. An essential requirement is that there be "an actual bona fide and substantial question or issue in dispute or substantial uncertainty of legal relations which requires settlement between the parties." Practice Book § 277 (b). The defendants claim that the issue in the present case is identical to the issue in the appeal from the denial of the special permit and has been determined by the judgment rendered in that appeal. The claim is unsound. In the appeal from the decision of the planning and zoning commission, the legality of the requirement of a special permit was assumed, and the issue was whether the plaintiff had shown itself to be entitled to the permit. In the present case, the issue is whether the plaintiff can constitutionally be required to obtain a permit. In the former case, the plaintiff, having recognized and utilized the zoning regulations by applying for the special permit thereunder, could not, in its appeal from the denial of that permit, attack the constitutionality of the provision governing the issuance of the permit. *Florentine* v. *Darien,* 142 Conn. 415, 428, 115 A.2d 328; *Hutchison* v. *Board of Zoning Appeals,* 138 Conn. 247, 252, 83 A.2d 201; *Strain* v.

*Zoning Board of Appeals,* 137 Conn. 36, 38, 74 A.2d 462. It could, however, attack the constitutionality of the regulations in an independent proceeding, as it seeks to do in the present case. *Florentine* v. *Darien,* supra, 430; *Hutchison* v. *Board of Zoning Appeals,* supra, 252; *Strain* v. *Zoning Board of Appeals,* supra, 40.

To be entitled to a declaratory judgment, the plaintiff must have "an interest, legal or equitable, by reason of danger of loss or of uncertainty as to . . . [its] rights or other jural relations." Practice Book § 277 (a). In order to attack the constitutionality of the regulations, the plaintiff must demonstrate that it is adversely affected by them. *Karen* v. *East Haddam,* 146 Conn. 720, 723, 155 A.2d 921; *State* v. *Hurliman,* 143 Conn. 502, 506, 123 A.2d 767; *State* v. *Donahue,* 141 Conn. 656, 665, 109 A.2d 364. It has been conclusively determined that the plaintiff is not entitled to a special permit under the terms of the zoning regulations. Unless the requirement of a special permit is invalid, therefore, the plaintiff is barred from the use of its property for the desired purpose until such time as it submits an application which is approved by the commission. The question of validity has not been decided, and it is in issue in this case. The plaintiff has satisfied the requirements for a declaratory judgment as to the constitutionality of the zoning regulations.

We turn then to the question on which a declaratory judgment was sought. The case comes to us on a reservation based on stipulated facts. The reservation is not in proper form. The second question propounded embraces various and sundry grounds for the claimed unconstitutionality of the regulations. "Questions in a reservation should be so

stated that each will present a definite point of law and that the court may give to each a categorical or very definite answer." *Ericson* v. *Childs,* 124 Conn. 66, 82, 198 A. 176; Practice Book § 470. Because of the importance of the public interest involved, however, we will entertain the reservation. *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 133, 55 A.2d 732; *Barnes* v. *New Haven,* 140 Conn. 8, 11, 98 A.2d 523; *Stanton* v. *Stanton,* 140 Conn. 504, 509, 101 A.2d 789.

The stipulated facts, beyond those already recited, are as follows: Darien is divided into eight zone classifications, five of which are residential. The R-2 zone is the most highly restricted zone, and certain uses permitted in less highly restricted zones are excluded from it. The proposed school would provide elementary educational facilities for children of the plaintiff's parish in a building containing sixteen classrooms with a capacity of 600 pupils. A residence now on the premises would be converted into living quarters for teachers, and other changes would be made on the property. The access road to an existing public high school is about 750 feet from the plaintiff's southern boundary, and a new public elementary school is contemplated at a location similar in size to the plaintiff's tract and nine-tenths of a mile away in the same zone. Both the existing and the proposed public schools have been approved by the planning and zoning commission under what is now General Statutes § 8-24,[2] subject to prescribed conditions relating to buffer

[2] "Sec. 8-24. MUNICIPAL IMPROVEMENTS. No action shall be taken by any municipal agency . . . on any proposal involving . . . the location, relocation, acquisition of land for, or the abandonment, sale or lease of, airports, parks, playgrounds and other municipally owned properties and public buildings . . . until it has been referred to the [municipal planning] commission for a report. . . ."

strips, parking and playground facilities and exterior lighting. The plaintiff's proposed school would comply with state standards as to equivalent instruction and compulsory attendance. See General Statutes §§ 10-184, 10-188. The stipulated facts do not disclose that any religious instruction would be offered.

We consider first the portions of the compound question submitted to us which relate to a claim that there has been an infringement of the free exercise of religion and of the right to impart and receive religious instruction and to a claim that the zoning regulations do not set up adequate standards of administration. The answer to the first claim is that on the stipulated facts no issue of the free exercise of religion or of religious instruction is involved. Even if the assumption were to be made, however, that, since this is a parochial school, the students will receive religious instruction, nevertheless the right to impart or receive that instruction may constitutionally be subjected to reasonable regulations. Although the majority rule is that churches may not be wholly excluded from residential zones; 2 Yokley, Zoning Law and Practice § 222; note, 74 A.L.R.2d 377; even they may be subject to reasonable regulation regarding their location without violating the constitutional guarantee of freedom of religion. *Milwaukie Company of Jehovah's Witnesses* v. *Mullen,* 214 Ore. 281, 330 P.2d 5, cert. denied, 359 U.S. 436, 79 S. Ct. 940, 3 L. Ed. 2d 932. For the purposes of the present case, we may therefore treat parochial and private schools on the same footing as, indeed, the regulations in issue assume to do.

The second proposition, namely the claimed lack of adequate standards to guide the commission,

finds its answer in the provisions of the zoning regulations printed in the footnote which clearly prescribe the criteria to be considered by the zoning commission in passing on an application for a special permit. "The challenge of unconstitutional delegation of legislative power is successfully met if the . . . [ordinance] declares a legislative policy, establishes primary standards for carrying it out or lays down an intelligible principle to which the agency must conform with a proper regard for the protection of the public interest, and affords a resort to the courts for the protection of both the public interest and private rights." *Jennings* v. *Connecticut Light & Power Co.,* 140 Conn. 650, 670, 103 A.2d 535; see also *Clark* v. *Town Council,* 145 Conn. 476, 483, 144 A.2d 327. In furtherance of the purposes of the zoning regulations and after being satisfied that an applicant has otherwise met the general requirements, the commission, in order to grant a special permit, must find, after a public hearing, that the location and size of the proposed use, the nature and intensity of the operation involved in or conducted in connection with it, the size of the site in relation thereto and its location with respect to access streets harmonize with the orderly development of the district. In addition, it must find that the location, nature and height of buildings, walls and fences and the nature and extent of proposed landscaping will be such as not to hinder or discourage the appropriate development and use of adjacent land and buildings and that parking areas will be of adequate size, suitably screened from adjoining residences and with entrances and exits designed to prevent traffic hazards and nuisance. The special permit regulations are not unconstitutional because of a failure to establish adequate

standards to meet the constitutional requirement. *Clark* v. *Town Council,* supra, 484.

We come then to the final question, whether the requirement of a special permit deprives the plaintiff of its property without due process of law or denies it the equal protection of the law. In our approach to the question, we must make every presumption and intendment in favor of the regulations and sustain them unless they are clearly invalid. *Schwartz* v. *Kelly,* 140 Conn. 176, 179, 99 A.2d 89. The basic question is whether some natural and substantial difference, germane to the subject and purposes of the regulations, permits the treatment of parochial and private schools as a class distinct from public schools. *Schwartz* v. *Kelly,* supra, 181. In order to hold a zoning regulation unconstitutional as violative of the due process of law or equal protection clauses of the state or federal constitution, it must appear "that . . . [the] provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." *Euclid* v. *Ambler Realty Co.,* 272 U.S. 365, 395, 47 S. Ct. 114, 71 L. Ed. 303; *State* v. *Hillman,* 110 Conn. 92, 105, 147 A. 294.

The plaintiff contends that the requirement that it obtain a special permit in order to establish a private school in a residence zone has no substantial relation to the public health, safety, morals or general welfare. The case is not one where private schools are wholly excluded from a town; see *Roman Catholic Archbishop* v. *Orchard Lake,* 333 Mich. 389, 53 N.W.2d 308; or where they are wholly excluded from a residence zone in which public schools are permitted. See *Roman Catholic Welfare Corporation* v. *Piedmont,* 45 Cal. 2d 325, 289 P.2d 438; *Catholic Bishop of Chicago* v. *Kingery,*

371 Ill. 257, 20 N.E.2d 583; *State* v. *Northwestern Preparatory School,* 228 Minn. 363, 37 N.W.2d 370; *State ex rel. Wisconsin Lutheran High School Conference* v. *Sinar,* 267 Wis. 91, 65 N.W.2d 43; *Miami Beach* v. *State,* 128 Fla. 750, 175 So. 537; *Phillips* v. *Homewood,* 255 Ala. 180, 50 So. 2d 267; *Matter of Diocese of Rochester* v. *Planning Board,* 1 N.Y.2d 508, 522, 136 N.E.2d 827. Rather, this is a case where they are permitted, the only proviso being that they meet certain requirements for obtaining a special permit. See *West Hartford Methodist Church* v. *Zoning Board of Appeals,* 143 Conn. 263, 269, 121 A.2d 640; *Milwaukie Company of Jehovah's Witnesses* v. *Mullen,* supra. The question is whether, under the agreed state of facts before us, it is a legitimate exercise of the police power to require the plaintiff to meet such requirements in order to locate a school in the most highly restricted residence zone.

All private property is held subject to the police power of the state; *Clark* v. *Town Council,* 145 Conn. 476, 482, 144 A.2d 327; and its use may be regulated in the interest of the public health, safety or welfare. *Chouinard* v. *Zoning Commission,* 139 Conn. 728, 732, 97 A.2d 562. The establishment of a private school in a residence district necessarily affects traffic control, parking, noise and fire protection, all of which are proper factors to consider in exercising the police power. The permit regulation itself, however, must not be arbitrary or unreasonable. *Clark* v. *Town Council,* supra. "Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts of the severed class. The basis for a reasonable classification must show such a difference as to justify the division. 'A proper classi-

fication . . . must embrace all who naturally belong to the class—all who possess a common disability, attribute or qualification and there must be some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched.'" *State* v. *Cullum,* 110 Conn. 291, 295, 147 A. 804; *State* v. *Hurliman,* 143 Conn. 502, 505, 123 A.2d 767; *State ex rel. Higgins* v. *Civil Service Commission,* 139 Conn. 102, 107, 90 A.2d 862; *Warner* v. *Gabb,* 139 Conn. 310, 314, 93 A.2d 487. Neither article first, § 1, of the Connecticut constitution nor the fourteenth amendment to the federal constitution has ever been held to prevent legislative bodies from dealing differently with different classes of persons, provided there is some natural and substantial difference germane to the subject and purposes of the legislation between those within the class included and those whom it leaves untouched. *Lyman* v. *Adorno,* 133 Conn. 511, 520, 52 A.2d 702. If the distinction made by these regulations between public and private schools meets this test, the regulations are valid.

If we keep in mind the generally recognized purposes of zoning regulations, from which those now involved do not differ, a clear basis appears for the additional requirements demanded of parochial and private schools. The regulations, in substance, require only that, in addition to the uniform standards set for the R-2 zone, such schools must submit to the planning and zoning commission a plan showing pertinent details of the proposed use, such as the location of buildings, parking areas, traffic access and drives, open spaces and landscaping. Thereupon, the commission is required to consider the physical aspects of the project at a public hearing

from the standpoint of its harmony with the appropriate and orderly development of the district and its effect on the appropriate development, use, and value of adjacent land and buildings. The public school on the other hand is entirely a creature of statute. A public school building project must have the approval of the planning commission or of the legislative body of the municipality in the event the planning commission disapproves. General Statutes § 8-24. It must also have the approval of the town board of education and the town building committee, and the plans must be filed with the state board of education before construction is begun. General Statutes § 10-291. All of these requirements tend to assure that those objectives which are the fundamental purpose of a zoning ordinance will be safeguarded. None of them apply to parochial or private schools. Therefore, the establishment and the use of the physical plant of a parochial or a private school, unless controlled in some manner such as is attempted in the present regulations, would enjoy an immunity from scrutiny by public authority not accorded to a public school. Nevertheless, the impact of a parochial or a private school on the area in which it operated could be as great. Private and parochial schools may embrace student bodies varying from a handful of individuals to many hundreds, as in the present case. They may serve students of varying ages and involve varying safety and transportation problems. They may involve resident or transient attendance. The facilities offered in the way of public assembly rooms, auditoriums, athletic fields and the like may present critical traffic and parking problems as well as the problems of noise and public safety attendant on the concentration of large crowds of people. The

regulations in issue do no more than to offer assurance of a measure of supervision by a responsible public authority over conditions which affect the public health, safety and general welfare. These factors clearly justify the treatment of the parochial and private school as a class separate and distinct from the public school. *Yanow* v. *Seven Oaks Park, Inc.,* 11 N.J. 341, 94 A.2d 482; note, 36 A.L.R.2d 653. Consequently, the regulations in question satisfy constitutional requirements.

To the first question in the reservation we answer, "Yes"; to the second question we answer, "No."

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.