[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
 I Statement of the Case
The plaintiff, Bethlehem Christian Fellowship, Inc. (Fellowship), a religious, non-stock Connecticut corporation, appeals a decision of the defendant, the town of Morris Planning and Zoning Commission, denying its application for a special exception to build a church. Also named as defendants are Jeanne Farrell and Stephen Reinhold. The commission acted pursuant to General Statutes § 8-3c and the Morris zoning regulations in denying the application for a special exception. The plaintiff appeals pursuant to General Statutes § 8-8.
 II Procedural History
Notice of the commission's decision denying the application for a special exception was published in the Waterbury Republican-American on November 10, 1997. (Return of Record [ROR], Item 29.) The Fellowship filed an appeal to the Superior Court on December 12, 1997. On January 20, 1998, the court granted Jeanne Farrell and Stephen Reinhold's motion to be made party defendants.[1] On January 28, 1998, the commission filed an answer to the appeal. The commission also filed the return of record on January 28, 1998. On March 23, 1998, the court, Pickett, J.,
issued a scheduling order for the filing of briefs and responsive pleadings. On April 27, 1998, the court, Kocay, J., denied the Fellowship's motion to conduct discovery on the issue of whether the commission was biased against the application or the Fellowship. On April 21, 1998, Farrell and Reinhold filed responsive pleadings. On May 22, 1998, the Fellowship filed a memorandum of law in support of the appeal. On June 22, 1998, Farrell and Reinhold filed a memorandum of law in support of the commission's decision. On June 23, 1998, the commission filed a memorandum of law in support of its decision. On July 27, 1998, the Fellowship filed a brief in reply to the commission's memorandum. On August 6, 1998, the commission filed a supplemental brief on the issue of aggrievement. On August 11, 1998, the Fellowship filed a brief in reply to the commission's supplemental brief on the issue of aggrievement. CT Page 14467
On October 9, 1998, the court, Wiese, J., dismissed the Fellowship's appeal, concluding that the Fellowship was not an aggrieved party because at the time the appeal was filed, the Fellowship did not have a valid contract to purchase the subject property. The court reasoned that it did not have subject matter jurisdiction because the plaintiff lacked standing to pursue the appeal. On October 29, 1998, the Fellowship filed a petition for certification to appeal the court's decision to the Appellate Court. On January 13, 1999, the Appellate Court granted certification.[2] The Appellate Court reversed the judgment of the trial court and remanded the case to the trial court for a hearing on the merits of the Fellowship's appeal, concluding that the trial court's decision that the Fellowship is not aggrieved is an overly technical application of the test for aggrievement. See Bethlehem ChristianFellowship, Inc. v. Planning Zoning Commission, 58 Conn. App. 441,755 A.2d 249 (2000). The Appellate Court concluded that the contract for the purchase and sale of the subject property remained in effect because time was not of the essence in the sales contract, the sellers did not formally demand that the Fellowship adhere to the closing date, the parties to the contract treated the contract as being in effect throughout the proceedings and the wording of the contract did not convey a different intent. Id., 447.
 III Factual History
On May 28, 1996, the Fellowship entered into a written agreement to purchase a four acre lot on West Morris Road in Morris, Connecticut, from sellers Catherine Mosimann and Robert Mosimann, executor of the estate of Walter Mosimann. (Plaintiff's Exhibit 1.) The contract provided that the purchase was contingent upon the Fellowship obtaining the necessary approvals from the commission and other town regulatory agencies to make the subject parcel an approved building lot by July 19, 1996. (Plaintiff's Exhibit 1, ) The subject parcel is located in a residential zone. (ROR, Item 2.) In January, 1997, the Fellowship entered into a written contract modification agreement with sellers Catherine Mosimann, Robert Mosimann, Walter Mosimann, Jr. and De'Lis'Ka Bates. (Plaintiff's Exhibit 2.) The contract modification extended the date by which the Fellowship was to secure zoning approval for the construction of a church to March 31, 1997, and extended the closing date to April 18, 1997. (Plaintiff's Exhibit 2.)
The Fellowship, along with the aforementioned sellers, filed an application with the commission, dated October 1, 1997, requesting a special exception to use the location as its place of worship and to construct a meeting house.[3] (ROR, Item 2.) The subject lot is located CT Page 14468 in an R-60 residential zone and the proposed meeting house/church is a permitted special exception use in that district, subject to the commission's approval of the application. (ROR, Items 2, 32, pp. 29, 32, 62.) The proposed meeting house would be approximately twenty-two feet high in the front and cover an area of approximately fifty feet by eighty-five feet. (ROR, Item 2.) The plan calls for a parking area located at the back and north side of the proposed facility, which would accommodate approximately fifty cars. (ROR, Items 2, 4.) The Fellowship represented that it had a membership of fifteen families, totaling ninety people, and that it would use the meeting house for Sunday morning services, midweek meetings and occasional outings and weddings. (ROR, Item 2.) The Fellowship indicated that the use of alcohol would be prohibited and the meeting house would not be rented to outside groups. (ROR, Item 2.)
In addition to the application, the Fellowship filed a site plan, a sewage disposal plan, a plan approved by the Torrington Area Health district for a septic permit, driveway culvert drainage computations and building plans with the commission. (ROR, Items 4, 5, 6, 7, 8.) The inland wetlands commission previously reviewed the application and indicated that since there are no wetlands on the subject lot, a permit is not required. (ROR, Item 3.) Additionally, the fire marshal submitted a letter to the commission indicating that there is a shortage of water in the subject area, so the Fellowship would need to install either sprinklers in the proposed building or a fire pond on the property. (ROR, Item 13.) Robert Mosimann agreed to dig a fire pond on the property to supply water for the Fellowship. (ROR, Item 14.)
A traffic assessment of West Morris Road in the vicinity of the proposed site was conducted by James G. Bubaris, P.E.[4] (ROR, Item 10.) The traffic assessment was conducted assuming the "worst case" scenario, that 200 people would attend any given Sunday morning service and 50 people would attend any given Wednesday evening meeting.[5] (ROR, Item 10, p. 1.) Bubaris determined that northbound and southbound sight line distances from the proposed site drive location far exceed those required for the prevailing speed of traffic on West Morris Road in the vicinity of the site. (ROR, Item 10, pp. 4, 9.) Bubaris expressed the opinions that West Morris Road has relatively low traffic volume, and even with the addition of site-generated traffic traveling to and from the proposed development, traffic volumes on West Morris Road would remain at relatively low levels. (ROR, Item 10, pp. 5-6.) Bubaris further indicated that the proposed site drive intersection would operate at very good "levels of service" during all of the peak arrival and departure periods.[6] (ROR, Item 10, p. 8.) In addition, Bubaris' review of accidents for the surrounding roadway network within the last three years showed no recurring problems or patterns requiring corrective action or CT Page 14469 that may be exacerbated by the proposed project. (ROR, Item 10, pp. 9, 10.) In conclusion, Bubaris found that the proposed church should have a minimal impact on traffic safety and traffic operations on the surrounding roadway network. (ROR, Item 10, p. 10.)
At the commission's request, John P. Thompson, a professional engineer from Milone MacBroom, Inc. (MMI), reviewed the Fellowship's application, visited the subject site and reviewed the traffic assessment performed by Bubaris. (ROR, Item 11.) Thompson indicated that the findings of Bubaris' traffic assessment appear to be consistent with presented data, independent field investigations by MMI and accepted traffic engineering standards and practices. (ROR, Item 11.) Thompson also reviewed the site plan and concluded that once specific issues are addressed, the special exception application, from a technical standpoint, will be suitable for approval. (ROR, Item 12.)
Notice was published in the Waterbury Republican-American on October 3, 1997, and October 11, 1997, informing the public that the commission would be holding a public hearing on October 15, 1997, regarding the Fellowship's application for a special exception to construct a meeting house. (ROR, Item 28.) Pursuant to General Statutes § 8-3c(b), the commission held the public hearing on October 15, 1997, in which the commission heard arguments in support of and in opposition to the special exception application to construct a church. (ROR, Item 31.) The commission also received into the record numerous documents.
At its November 5, 1997 meeting, the commission voted, six to one, with one abstention, to deny the application for the special exception. (ROR, Item 27.) Acknowledging that the application for the special exception was denied and in an apparent effort to extend the contract, the Fellowship and the sellers entered into a second agreement on December 24, 1997, extending the contingency date for zoning approval to November 30, 1998, or the date of an approval by the commission or a court, whichever date occurs first. (Plaintiff's Exhibit 3.)
 IV Jurisdiction
A. Aggrievement
General Statutes § 8-8 (b) provides in relevant part that "any person aggrieved by any decision of a board may take an appeal to the superior court for the judicial district in which the municipality is located." General Statutes § 8-8 (a)(1) provides that: "`Aggrieved person' means a person aggrieved by a decision of a board and includes any CT Page 14470 officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board."[7]
"`To be an aggrieved person, one must be affected directly or in relation to a specific personal and legal interest in the subject matter of the decision, as distinguished from a general interest such as is the concern of all members of the community, and the appellant must be specially and injuriously affected as to property or other legal rights.'" Maple LeafConstruction Inc. v. Planning Commission, superior court, judicial district of Tolland at Rockville, Docket No. 056130 (May 14, 1996,Rittenband, J.), quoting Smith v. Planning Zoning Board, 203 Conn. 317,321, 524 A.2d 1128 (1987). In the present case, the Appellate Court has determined that the Fellowship is an aggrieved party because the commission's decision has directly affected its contractual and property rights with respect to the subject property. See Bethlehem ChristianFellowship, Inc. v. Planing Zoning Commission, supra, 58 Conn. App. 441.
B. Timeliness of the Appeal and Service of Process
General Statutes § 8-8 (b) provides that an "appeal shall be commenced by service of process . . . within fifteen days from the date that notice of the decision was published as required by the general statutes." Notice of the commission's decision was published in the Waterbury Republican-American on November 10, 1997. (ROR, Item 29.) Pursuant to General Statutes § 8-8 (b) and (e), a sheriff served the commission by leaving process at the usual place of abode of chairman Barbara E. Bongiolatti and served the town by leaving process in the hands of town clerk Ann E. Carr on November 24, 1997. (Sheriff's Return.) Accordingly, this appeal was timely served on the proper parties.
 V Standard of Review
"The terms `special permit' and `special exception' have the same legal import and can be used interchangeably." A.P. W. Holding Corp. v.Planning Zoning Board, 167 Conn. 182, 185, 355 A.2d 91 (1974). "A special [exception] allows a property owner to use his property in a manner expressly permitted by the local zoning regulations . . . The proposed use, however, must satisfy standards set forth in the zoning regulations themselves as well as the conditions necessary to protect the public health, safety, convenience, and property values." (Internal quotation marks omitted.) Raczkowski v. Zoning Commission,53 Conn. App. 636, 639, 733 A.2d 862, cert. denied, 250 Conn. 921,738 A.2d 658 (1999); Housatonic Terminal Corp. v. Planning ZoningBoard, 168 Conn. 304, 307, 362 A.2d 1375 (1975). CT Page 14471
"When ruling upon an application for a special permit, a planning and zoning board acts in an administrative capacity." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, 244 Conn. 619,627, 711 A.2d 675 (1998). "Acting in this administrative capacity, the [zoning commission's] function is to determine whether the applicant's proposed use is expressly permitted under the regulations, and whether the standards set forth in the regulations and the statute are satisfied. . . . Moreover, [i]t is well settled that in granting a special permit, an applicant must satisf[y] all conditions imposed by the regulations. . . . The zoning commission has no discretion to deny the special exception if the regulations and statutes are satisfied." (Brackets in original; citation omitted; internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 639-40; see also Housatonic TerminalCorp. v. Planning Zoning Board, supra, 168 Conn. 307.
"The settled standard of review of questions of fact determined by a zoning authority is that a court may not substitute its judgment for that of the zoning authority as long as it reflects an honest judgment reasonably exercised . . . The court's review is based on the record, which includes the knowledge of the board members gained through personal observation of the site . . . or through their personal knowledge of the area involved. (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 643. "On appeal, a reviewing court reviews the record of the administrative proceedings to determine whether the commission . . . has acted fairly or with proper motives or upon valid reasons." (Internal quotation marks omitted.) Schwartz v. Planning Zoning Commission, 208 Conn. 146, 152, 543 A.2d 1339 (1988). "Review of zoning commission decisions by the Superior Court is limited to a determination of whether the commission acted arbitrarily, illegally or unreasonably." (Internal quotation marks omitted.) Raczkowski v. ZoningCommission, supra, 53 Conn. App. 639.
"`[I]t is not the function of the court to retry the case. Conclusions reached by the commission must be upheld by the trial court if they are reasonably supported by the record. The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency. The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached.'" Middlebury v. Planning ZoningCommission, superior court, judicial district of Waterbury, Docket No. 130420 (April 14, 1997, Pellegrino, J.), quoting Protect Hamden/NorthHaven from Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, 220 Conn. 527, 542-43, 600 A.2d 757 (1991).
"[W]here a zoning commission has formally stated the reasons for its decision the court should not go behind that official collective CT Page 14472 statement . . . [and] attempt to search out and speculate upon other reasons which might have influenced some or all of the members of the commission to reach the commission's final collective decision." DeMariav. Planning Zoning Commission, 159 Conn. 534, 541, 271 A.2d 105
(1970). "In situations in which the zoning commission . . . [states] the reasons for its action, the question for the court to pass on is simply whether the reasons assigned are reasonably supported by the record and whether they are pertinent to the considerations which the commission is required to apply under the zoning regulations. . . . The agency's decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Citations omitted; internal quotation marks omitted.) Irwin v. Planning ZoningCommision, supra, 244 Conn. 629. "The burden of proof to demonstrate that the [commission] acted improperly is upon the plaintiffs." (Internal quotation marks omitted.) Bloom v. Zoning Board of Appeals, 233 Conn. 198,206, 658 A.2d 559 (1995).
 VI Discussion
The commission denied the application for the special exception based on the following reasons:
"1. Based on the testimony received at the public hearing by real estate appraisers Mr. Oles and Mr. Fussenich that a public building of this size may and will decrease property values in this R-60 — Single-Family dwelling district;
"2. Based on the traffic study submitted by the applicant's traffic engineer and based on the personal knowledge of the commission as to the nature of the town access road and site lines associated with this parcel that any increase in traffic at this location could create a hazardous situation, especially considering the grade and curves involved and the inclement weather driving conditions on this road;
"3. Based on the testimony of property owners residing on both sides of this north and south connector town road to Routes 202 and 109 regarding their concerns for public safety and the safety of their children from the anticipated increased use of this site;
"4. Based on the testimony of various property owners and their attorney regarding the potential for increasing the level of activity associated with this type of facility, as well as the inability of the commission to control any future expansions; see [Beit Havurah v. ZoningBoard of Appeals, 177 Conn. 440, 418 A.2d 82 (1979)]; CT Page 14473
"5. Based on Morris Zoning Regulations [Section] 52.1 — Character — wherein this building will not be in harmony with and conform to the orderly development of this neighborhood;
"6. And based on Morris Zoning Regulations Section 52.5 — Neighborhood — wherein the site plan and architectural plans will not harmonize with the neighborhood and enhance the appearance and beauty of the community and conform to the specific standards as set out in the town plan of development for the orderly growth of the town of Morris." (ROR, Item 27, pp. 2-3.)
The Fellowship appeals on the grounds that the commission acted arbitrarily, illegally and in abuse of its discretion because the record does not reasonably support any of the six reasons for the commission's denial of the application.[8] The commission argues that the six reasons for denial of the special exception application are supported by the facts contained in the record and the personal knowledge of the commission members. The pro se defendants maintain that the commission's decision should be upheld because it is amply supported by the record and the application does not meet the requirements of the regulations because it violates the character, lot size and neighborhood standards as set forth in § 52 of the Morris zoning regulations. They further contend that the commission had the discretion to determine that the subject site was inappropriate for accessory uses on the site which would range far beyond what may be envisioned by the commission, neighbors or even the Fellowship.
The purpose of the Morris zoning regulations, as set forth in § 1, is "to guide the growth and development of the [town] and promote beneficial and convenient relationships among residential, agricultural, commercial, industrial and public areas within the [t]own. In addition, these Zoning Regulations are designed to achieve the following more particularly described purposes: . . . 3. to provide for the safe and convenient circulation of traffic throughout the town and to avoid traffic congestion; . . . 5. to protect and conserve the existing and planned character of all parts of the town, and thereby aid in maintaining property stability and value, and to encourage the orderly development of all parts of the town.; . . . 7. to minimize conflicts among uses of land and buildings and to bring about the gradual conformity of uses of land and buildings with the comprehensive plan herein set forth . . . (ROR, Item 32, p. 1.)
Section 52 of the Morris zoning regulations, entitled Special Exceptions, provides: "Purpose: Uses permitted as Special Exception uses subject to the approval of the Commission are deemed to be permitted uses CT Page 14474 in their respective districts, subject to the satisfaction of the requirements and standards of this Section. Special Exception uses that may be permitted in a District are unusual uses that under favorable circumstances will be appropriate, harmonious and desirable uses in the District but that possess such special characteristics that each use should be considered as an individual case." (ROR, Item 32, p. 62.) Furthermore, the general standards for special exceptions under § 52 of the Morris zoning regulations provides in relevant part: "The proposed buildings and structures shall conform to the following General Standards: 1. Character: The location, type, character and extent of the use and of any building or other structure in connection therewith shall be in harmony with and conform to the appropriate and orderly development of the Town and the neighborhood and shall not hinder or discourage the appropriate development and use of adjacent property or impair the value thereof. . . . 5. Neighborhood: The Site Plan and architectural plans shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community. . . ." (ROR, Item 32, pp. 63-64.)
 A. Property Values
With respect to the commission's first reason for denial, the Fellowship argues that neither real estate appraiser provided actual evidence that the establishment of a church in a residential zone would result in a decrease in property values. The commission responds that its decision should be upheld because the written record and the transcript of the public hearing contain ample evidence from which the commission could have concluded properly that approval of the application would result in a decrease in property values.
The record reasonably supports the commission's denial of the special exception application based on the testimonies and written opinions by the real estate appraisers that property values may and will be adversely affected. One of the purposes of the Morris zoning regulations, as set forth in § 1, is to "protect and conserve the existing and planned character of all parts of the town, and thereby aid in maintaining property stability and value. . . ." (ROR, Item 32, p. 1.) In evaluating an application for a special exception, § 52 of the Morris zoning regulations requires the commission to examine whether it will "impair the value" of adjacent properties. (ROR, Item 32, p. 63.) L. Cleveland Fussenich, a real estate appraiser, testifying in support of the special exception application, indicated that he knew of no other situation where a church was located in a rural area comparable to the proposed site, so it is difficult to prove whether property values would decrease. (ROR, Item 31, pp. 29-31.) He testified that property values could go down, and CT Page 14475 if so, minimally, but there is no certainty as to this determination. (ROR, Item 31, p. 30.) Arthur Oles testified in opposition to the application. He is licensed in the state of Connecticut and has performed real estate appraisal services since 1972. (ROR, Item 21.) Oles testified that the real estate market is very fragile and any use not in conformity with the neighborhood could and will have an adverse effect on property values. (ROR, Item 31, p. 66.) He testified that property values of houses located near the proposed church, with its noise, would decrease significantly. (ROR, Item 31, pp. 66-69.) He also testified that he knew of no other situation where a church was located in a rural area comparable to the proposed site. (ROR, Item 31, p. 67.) In a written opinion to the commission, Oles concluded from his examination of the application and the proposed use that "[t]he adverse effect on property values in the immediate neighborhood can easily be 10-20%, if not more for the most expensive home opposite the proposed church. . . . The church use does not conform to the neighborhood, with no transition in character between the nearby single family homes and the proposed use." (ROR, Item 22.) In addition, a number of neighbors of the proposed site testified concerning their fears about the decrease in their property values; (ROR, Item 31, pp. 39-41, 49); and the record contains a letter from property owners who are concerned about the effect on the value of their property. (ROR, Item 20.)
Oles and Fussenich offered their opinions as experts in their fields and the commission's reliance on this evidence was not arbitrary, illegal or unreasonable. "`The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency.'"Middlebury v. Planning Zoning Commission, supra, Superior Court, Docket No. 130420, quoting Protect Hamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 543. Accordingly the commission's denial of the application based on its conclusion that property values may and will be decreased reflects its judgment reasonably supported by the record and this court may not substitute its judgment for that of the commission.
 B. Traffic
With respect to the commission's second reason for denial, the Fellowship argues that the commission's conclusion that any increase in traffic could create a hazardous situation was arbitrary and unsupported by the record because the overwhelming and incontrovertible evidence of the traffic assessment indicated that the proposed church would not create traffic safety issues or congestion. Furthermore, citing Daughtersof St. Paul, Inc. v. Zoning Board of Appeals, 17 Conn. App. 53, 69,549 A.2d 1076 (1988) and Grace Community Church v. Planning ZoningCommission, 42 Conn. Sup. 256, 615 A.2d 1092 (1992), aff'd, CT Page 1447630 Conn. App. 765, 622 A.2d 591, cert. denied, 226 Conn. 903,625 A.2d 1375, cert. denied, 510 U.S. 944, 114 S.Ct. 383, 126 L.Ed.2d 332
(1993), the Fellowship contends that the regulations and case law do not permit the denial of an application based on a mere increase in traffic.
The commission maintains that its decision should be upheld because it properly found that approval of the application could result in an increase in traffic, creating a hazardous situation, because the record reflects that the subject site is located near a sharp curve and steep grade, and many people, including children, use the road for bike riding, walking, jogging, horseback riding and dog walking. Further, the commission argues that it was not required to believe the expert evidence of the traffic assessment nor the review of the assessment, but it was legally entitled to rely on their own personal knowledge concerning matters within their competence, such as traffic congestion and street safety.
The record reasonably supports the commission's denial of the special exception application based on the traffic study and the commission's personal knowledge of the road, considering the grade and curves of the road and the inclement weather driving conditions on the road. One of the purposes of the Morris zoning regulations, as set forth in § 1, is "to provide for the safe and convenient circulation of traffic throughout the town and to avoid traffic congestion." (ROR, Item 32, p. 1.) Although the traffic assessment indicated that traffic safety and congestion would not be a negative factor at the proposed site; (ROR, Item 10.); the record also includes letters and testimonies of persons residing in the vicinity of West Morris Road that indicated that traffic safety would indeed be a problem. The record contains a letter from property owners who indicate that traffic safety is an issue because there is a large hill and a curve that leads into a narrow bridge at the proposed site, which is treacherous at times. (ROR, Item 20.) The property owners argue that the added traffic brought by the proposed church would compound the problem. (ROR, Item 20.) The property owners add that the bridge and the adjacent river are popular fishing spots and during fishing season, cars park on both sides of the road leading to the bridge. (ROR, Item 20.) In addition, neighbors of the proposed site testified at the public hearing that West Morris Road is dangerous because it is narrow, has a narrow bridge and is traveled upon by eighteen wheel trucks from three sand and gravel companies and an equipment company. (ROR, Item 32, pp. 42, 44, 50.) The neighbors further testified that many people, including children, use the road for walking, jogging, bike riding and horse riding. (ROR, Item 32, p. 50.)
The record also contains a letter from defendant Reinhold, who states that the proposed site is located near a dangerous corner and the results CT Page 14477 of the traffic assessment indicated low average speeds at that site because even the most reckless driver would be forced to slow down significantly at that corner. (ROR, Item 19.) Moreover, Reinhold states that the average speed of automobiles approaching the site from either direction is higher and exceeds the road's posted speed limit. (ROR, Item 19.) Lastly, Reinhold states that although there has not been many reported accidents at the site, there has never been the amount of traffic on the road as there will be if the church is constructed on the proposed site. (ROR, Item 19.)
The commission members have the discretion of weighing conflicting evidence to determine which is more credible. "`The credibility of the witnesses and the determination of issues of fact are matters solely within the province of the agency.'" Middlebury v. Planning ZoningCommission, supra, Superior Court, Docket No. 130420, quoting ProtectHamden/North Haven from Excessive Traffic Pollution, Inc. v. Planning Zoning Commission, supra, 220 Conn. 543. In addition, the commission members, who live in the town and have personal knowledge of the nature of West Morris Road and the surrounding area, can rely on this knowledge and observation of the area in making a determination. See Raczkowski v.Zoning Commission, supra, 53 Conn. App. 643. Accordingly, the record, which includes the commission members' personal knowledge and observation of the location in addition to the testimonies at the public hearing and other documentary evidence, reasonably supports the commission's conclusion that an increase in traffic safety at the subject location could create a hazardous situation.
 C. Public Safety
With respect to the commission's third reason for denial, the Fellowship asserts that there is no evidence in the record that the proposed church will endanger public safety. It argues that the slight increase in traffic is not a legally cognizable basis for finding that public safety would be jeopardized. Moreover, the Fellowship argues that it is improper to deny a special exception application based on "concerns" of property owners. The commission contends that it properly could have found that the increased use of West Morris Road could pose a threat to public safety because the record was replete with testimony that the road is a haven for children on bikes, dog walking, jogging, horseback riding and other recreational uses.
The concerns contained in the record pertain to the issue of increased vehicular traffic on West Morris Road. (ROR, Items 19, 20, 32, pp. 42, 44, 50.) As previously discussed, the commission's denial of the special exception application based on its conclusion that an increase in traffic at the subject area could create a hazardous situation is an CT Page 14478 administrative judgment reasonably supported by the record.
 D. Increase in Activity and the Inability of Commission to Control Uses
The Fellowship takes the position that the commission's fourth reason for denial is without merit because Beit Havurah v. Zoning Board ofAppeals, supra, 177 Conn. 440, does not restrict the authority of the commission to impose reasonable conditions on a grant of a special permit or special exception to avoid an unreasonable use of the property. In addition, the Fellowship argues that the fourth reason for denial violates the first amendment and the equal protection clause of thefourteenth amendment to the United States constitution and article seven
of the constitution of Connecticut because the commission failed to apply the regulations in a neutral manner, employing the rationale that any application to establish a church must be denied to protect the town from unfettered expansion of the exercise of religion. The Fellowship further maintains that a special permit application for a non-religious use would not be subject to such a basis for denial.
The commission argues that even if the proffered uses of the proposed building satisfied the standards for a special exception, under BeitHavurah v. Zoning Board of Appeals, supra, 177 Conn. 440, it would be unable to control any future expansion by the Fellowship at the subject location. While reasonable conditions could be attached to an approval of a special exception application, the commission contends that it is not reasonable to expect it as an administrative agency to be in a position to imagine all the potential accessory uses to which the property might be put in the future, as the church grows and changes it focus. That being the case, the commission argues that the town would always be exposed to the type of litigation embodied in Beit Havurah v. ZoningBoard of Appeals, supra, 177 Conn. 440.
In Beit Havurah v. Zoning Board of Appeals, supra, 177 Conn. 440, the plaintiff, a religious society, appealed the board's decision that sleeping accommodations at the plaintiff's synagogue for its members and guests was a permitted accessory use only on certain designated nights. Relying on evidence that the plaintiff's sleeping accommodations were essential to its religious fellowship and the absence of such accommodations would severely limit the plaintiff's religious activities, the Supreme Court held that the plaintiff's use of its property for unrestricted sleeping accommodations was a permitted accessory use. Id., 449-50.
Pursuant to §§ 21 and 22 of the Morris zoning regulations, a church is allowed in the subject residential zone as a special exception use. CT Page 14479 (ROR, Item 32, pp. 29, 32.) In addition, § 8 of the Morris zoning regulations permits accessory uses, which are defined by § 9 of the regulations as uses "subordinate to the principal building on a lot and used for purposes customarily incidental to those of the principal use. . . ." (ROR, Item 32, pp. 10, 14.) "A leading authority notes, in describing uses accessory to churches: "It has previously been commented upon that the concept of what constitutes a church has changed from a place of worship alone, used once or twice a week, to a church used during the entire week, nights as well as days, for various parochial and community functions. . . . The question arises as to the extent to which the additional activities are covered by the cloak of immunity which traditionally has been extended to the church. The language of the courts in several cases indicates that it is difficult to find an activity which, if sponsored by the church, would not share that immunity.'" BeitHavurah v. Zoning Board of Appeals, supra, 177 Conn. 447-48, quoting 2 Rathkopf, The Law of Zoning and Planning § 20.3, p. 20-53 (1978). Examples of permitted accessory uses include "`parking lots and playgrounds, convents, rectories, and Monasteries . . . day care centers, drug rehabilitation centers, and softball fields.'" Beit Havurah v.Zoning Board of Appeals, supra, 177 Conn. 448, quoting 2 Rathkopf, supra, p. 20-54.
The record does not support the commission's denial of the special exception application on the grounds that the commission would be unable to control future expansion and accessory uses. Notwithstanding the Fellowship's right to have accessory uses of the proposed church, § 52 of the Morris zoning regulations gives the commission the authority to regulate special exception uses by providing that "[a]ll Special Exceptions may be approved subject to appropriate conditions and safeguards necessary to conserve the public health, safety, convenience, welfare and property values in the neighborhood." (ROR, Item 32, p. 63.) "[P]roperty whose use constitutes a permitted use is not immune from regulation under the laws of nuisance or other applicable statutes such as those relating to public safety. . . ." Beit Havurah v. Zoning Boardof Appeals, supra, 177 Conn. 443. Churches "may be subject to reasonable regulation regarding their location without violating the constitutional guarantee of freedom of religion." St. John's Roman Catholic ChurchCorp. v. Darien, 149 Conn. 712, 720, 184 A.2d 42 (1993). "Constitutional provisions do not prevent all governmental regulation of churches and religious organizations, and they may be subject to religiously neutral regulation for a secular governmental purpose under the police power, such as . . . zoning regulations. Grace Community Church v. Planning Zoning Commission, supra, 42 Conn. Sup. 275, citing St. John's RomanCatholic Church Corp. v. Darien, supra, 149 Conn. 723.
Although this court concludes that the aforementioned reason for the CT Page 14480 commission's denial of the special exception application is not supported by the record, the "[commission's] decision must be sustained if an examination of the record discloses evidence that supports any one of the reasons given." (Internal quotation marks omitted.) Irwin v. Planning Zoning Commission, supra, 244 Conn. 629. As discussed, the record reasonably supports the commission's denial of the special exception application on other grounds.
 E. Proposed Building Will Not Conform to the Character of the Neighborhood and Will Not Harmonize With the Neighborhood
With respect to the fifth and sixth reasons for the commission's denial of the application, the Fellowship contends that the record does not support the commission's subjective decision that the proposed structure would not be in harmony with the surrounding buildings. The Fellowship argues that the commission failed to indicate any deviation between the site plan and the regulations regarding building size, design and layout because no such deviation exists and the site plan meets all of the specific regulations applicable to other houses in the area. Furthermore, the Fellowship asserts that the proposed worship house, with the exception of two double doors which are not visible from the road or nearby properties, will look like any other house in the area.
The commission argues that it was correct in denying the application on the grounds that the proposed use and the proposed structure would not be in harmony nor conform to the orderly development of the neighborhood because there was considerable evidence presented at the public hearing that the proposed building, with its twenty-four foot double wide driveway, fifty car parking lot, exterior lights and frequent activity with accompanying sounds would present a dramatic departure from the current residential nature of the neighborhood. The commission adds that no other public or commercial buildings are on West Morris Road and the proposed structure would be anomalous in the area.
Section 1 of the Morris zoning regulations states that two of the purposes of the regulations is to "protect and conserve the existing and planned character of all parts of the town, and thereby aid in maintaining property stability and value, and to encourage the orderly development of all parts of the town . . . [and] to minimize conflicts among uses of land and buildings and to bring about the gradual conformity of uses of land and buildings with the comprehensive plan herein set forth. . . ." (ROR, Item 32, p. 1.) With respect to special exceptions, § 52 of the Morris zoning regulations provides in relevant part: "The proposed use and the proposed buildings and structures shall conform to the following General Standards: 1. Character: The location, type, character and extent of the use and of any building or other structure in connection therewith CT Page 14481 shall be in harmony with and conform to the appropriate and orderly development and use of adjacent property or impair the value thereof. . . . 5. Neighborhood: The Site Plan and architectural plans shall be of a character as to harmonize with the neighborhood, to accomplish a transition in character between areas of unlike character, to protect property values and to preserve and enhance the appearance and beauty of the community." (ROR, Item 32, pp. 63-64.)
"[C]ourts have been reluctant to uphold the strict enforcement, against religious uses, of regulations that require special exception uses to be in architectural harmony with the surrounding neighborhood." Daughters ofSt. Paul, Inc. v. Zoning Board of Appeals, supra, 17 Conn. App. 67, citing 2 R. Anderson, American Law of Zoning (3d Ed.) § 12.27. "The possibility of discriminatory abuse of such regulations is obvious."Daughters of St. Paul, Inc. v. Zoning Board of Appeals, supra,17 Conn. App. 67. "Since factors such as . . . architectural harmony require the [commission] to make what are effectively "subject decision'; (Internal quotation marks omitted.) Christ Church Parish v.Zoning Board, superior court, judicial district of Fairfield at Bridgeport, Docket No. 289796 (April 2, 1993, Lager, J.); "such a subjective decision as the one now under review must be reasonably supported by facts discernable in the record." Daughters of St. Paul,Inc. v. Zoning Board of Appeals, supra, 17 Conn. App. 68.
Gary Fenn, director of the Fellowship, testified that the building was designed with a contemporary style in conformity with the houses in the neighborhood. (ROR, Item 31, p. 19.) Fenn expressed the opinion that if the church were to relocate, there would be no problem in converting the church into a residential dwelling. (ROR, Item 31, p. 21.)
The record also supports the conclusion that the proposed building will not conform to the character of the neighborhood nor harmonize with the neighborhood because it would have a twenty-four foot, double wide driveway; (ROR, Item 31, pp. 13, 16.); a parking lot in the rear and to the north side of the building that will accommodate fifty cars; (ROR, Items 2, 31, p. 14, 15.); two sets of double doors; (ROR, Items 8, 31, pp. 21-22); security lights facing down along the back edge of the proposed building, two side lights facing down on each of the doorways in the front of the building and a security light on the corner of the building facing toward the road that would illuminate the driveway area. (ROR, Item 31, p. 24.) As previously discussed, Oles expressed the opinion that "[t]he church use does not conform to the neighborhood, with no transition in character between the nearby single family homes and the proposed use." (ROR, Item 22.)
The record supports the conclusion that the commission reasonably CT Page 14482 exercised an administrative judgment that the proposed building will not enhance the appearance and beauty of the community, protect property values nor conform to the town plan of development for the orderly growth of the town. "[I]t is not the function of the court to retry the case. . . . The question is not whether the trial court would have reached the same conclusion but whether the record before the agency supports the decision reached." Middlebury v. Planning Zoning Commission, supra, superior court, docket no. 130420, quoting Protect Hamden/North Havenfrom Excessive Traffic Pollution, Inc. v. Planning ZoningCommission, supra, 220 Conn. 543.
 F. Constitutional Grounds for Appeal
The Fellowship also appeals on the grounds that: the commission violated the first amendment to the United States constitution and article seven of the constitution of Connecticut by determining that the constitutional protection against infringement upon the free exercise of religion unduly limits the commission from controlling the proposed church use and future expansion of the church, warranting a denial of such use in the town; the commission's application of the regulations was based on unduly vague standards in violation of the fourteenth amendment to the United States constitution, article first, § 11, of the constitution of Connecticut and due process of law attaching to all administrative proceedings; the decision to deny the application was in violation of the first amendment to the United States constitution, article first §§ 1, 3, 5 and 7 of the constitution of Connecticut and article seven of the constitution of Connecticut; the administrative proceeding regarding the application was fundamentally unfair and not in accordance with the fourteenth amendment to the United States constitution and article first, § 11, of the constitution of Connecticut; upon information and belief, members of the commission unlawfully prejudged the issues before the public hearing was convened; and the commission otherwise acted arbitrarily, illegally and in abuse of its discretion in one or more respects.
"Particularly close scrutiny is required here since the commission's action indirectly implicates freedom from religion under the state and federal constitutions." Grace Community Church v. Planning ZoningCommission, supra, 42 Conn. Sup. 263. The Supreme Court has stated, however, that churches "may be subject to reasonable regulation regarding their location without violating the constitutional guarantee of freedom of religion." St. John's Roman Catholic Church Corp. v. Darien, supra149 Conn. 720. "Constitutional provisions do not prevent all governmental regulation of churches and religious organizations, and they may be subject to religiously neutral regulation for a secular governmental purpose under the police power, such as . . . zoning regulations." GraceCT Page 14483Community Church v. Planning Zoning Commission, supra, 42 Conn. Sup. 275, citing St. John's Roman Catholic Church Corp. v. Darien, supra,149 Conn. 723.
Applying this stricter standard of review, this court still finds that the commission's decision to deny the special exception application is reasonably supported by the entire record of the administrative proceedings. As previously discussed, this record contains expert and lay testimonies, documents and the personal knowledge of the commission members. This complete record substantially supports the commission's conclusions that property values may and will be adversely affected by the proposed facility, that any increase in traffic at the proposed site could create a hazardous situation and that the proposed building will not conform to the character of the neighborhood and will not harmonize with the neighborhood. Accordingly, viewing the entire record with particularly close scrutiny, this court finds that the record substantially supports the commission's decision.
 VII CONCLUSION
The Fellowship failed to meet its burden to demonstrate that the commission acted improperly. The commission's decision was substantially supported by the record and was not unreasonable, arbitrary, illegal or an abuse of discretion. The Fellowship's appeal is dismissed.
By the Court,
PETER EMMETT WIESE, J.